## CHAPPELL, sheriff &c. vs. DANN.

Where a plaintiff's attorney bids off property at a sheriff's sale on execution, in his own name, and takes a certificate from the sheriff, in his own name, the presumption is that the purchase was on his own account; and an action will lie against him, by the sheriff, to recover the amount of his bid.

In such an action the defendant cannot by way of defense prove by parol that he purchased merely as the agent of the plaintiff in the execution, and not on his own account.

The admissions of the plaintiff in the execution, made after the sale and before the commencement of the action by the sheriff, are not admissible, being merely hearsay evidence.

Nor are a judgment and execution in a suit between other parties, admissible, for the purpose of establishing the fact that the defendant purchased as agent of the plaintiff in the execution.

The lien of an attorney, for costs, is destroyed by an assignment of the claim to another person, and the recovery of a judgment for the amount, by the assignee; and the lien will not be revived by a subsequent purchase of the judgment, by the attorney.

It is a general rule that parol evidence can never be admitted for the purpose of exonerating an agent, who has entered into a written contract in which he appears as a principal.

MOTION by the plaintiff for a new trial, on a bill of exceptions. The action was brought by the plaintiff to recover a demand claimed to be due on contract. The complaint alleged that the plaintiff, from December 17th, 1851, to September 11th, 1852, was sheriff of the county of Livingston. That on said 17th day of December, as such sheriff, he received an execution in due form, on a judgment in this court, in an action brought by William P. Humphrey against Albert L. Jackson, and docketed in said county on the 17th day of November, 1851, for $139.38. That Jackson having no personal property, the plaintiff, by one William Doty, his deputy, levied on a life estate of said Jackson in 23$\frac{20}{100}$ acres of land, situate in Avon in said county, and caused the same to be duly advertised for sale; and that the same was sold in due form by said plaintiff, at the court house in Geneseo in said county, on the 13th day of February, 1852; that on such sale the interest of said Jackson was struck off to the defendant in due form, for $154.27, and a certificate of such sale was delivered to him, and a

duplicate thereof was filed in the office of the clerk of said county; that the defendant thereby became indebted to the plaintiff in the amount of his bid, being $154.27, which the defendant had not paid, or any part thereof. To which the defendant answered, that at the time of such sale Humphrey was indebted to the defendant in $100 or under, for services, costs, charges, fees and disbursements, rendered and paid by said defendant as the attorney and counselor of Humphrey in said action against Jackson; that said indebtedness had not, or any part thereof, been discharged by said Humphrey; and that on account of such indebtedness the defendant had a lien on the proceeds arising from such judgment and execution; that the defendant, at the special instance and request of Humphrey, attended said sale and became the purchaser of Jackson's supposed interest, as the trustee, attorney and counselor of said Humphrey; and at his request and by his authority used the sum due on said execution for damages, costs, disbursements, sheriff's, printer's and other fees, as the purchase money of said Jackson's supposed interest; that after said interest had been struck off to the defendant, in order to preserve his lien and keep himself secure in the premises, and to create and carry out said trust, and for no other purpose, and with the knowledge and consent of said Humphrey, the defendant directed the plaintiff's deputy, the said Doty, to make his certificate of sale to the defendant; that such purchase was made for, and at the risk of said Humphrey, subject to the defendant's said lien. On the 2d day of May, 1853, the defendant obtained an order of this court staying proceedings on the part of the plaintiff in this cause, till the determination of a suit then depending in Livingston county court, brought by one Thomas C. Chase against said Humphrey. On the 4th day of January, 1853, the defendant served on the plaintiff's attorney a supplemental answer, without any motion having been made by the defendant's attorney, or order obtained, allowing the same to be done; but the attorneys for the plaintiff stipulated that the facts contained in said supplemental answer might be given in evidence on the trial, with the same force and effect as though they had been

Chappell *v.* Dann.

properly pleaded; provided the court should hold and decide that such facts were material and competent testimony for the defendant in this action. Said supplemental answer alleged that this action was brought for the benefit of Humphrey, and at his request; that he was the substantial plaintiff; that the plaintiff herein had no other than an official interest herein; that at or just before the commencement of this suit Humphrey was indebted to said defendant in the sum of $90.84; that $80.94 thereof was for services rendered and moneys paid for said Humphrey by the defendant, as the attorney, counselor and agent of Humphrey, in said action brought by him against Jackson; that after the commencement of this action, and after issue joined herein, the defendant having assigned his debt against Humphrey, to said Chase, in due form, Chase brought an action in the county court, against Humphrey, to recover the said debt; that Humphrey appeared in such action, and put in his answer to Chase's complaint, among other things alleging that this defendant had been fully paid for his services in said action brought by Humphrey against Jackson, and denying that at the time of the assignment of said debt, he the said Humphrey, was indebted to this defendant for any cause whatsoever; that at the September term in the year 1853, of the said county court, the said action of Chase against Humphrey was tried in due form of law, before the county judge of said county, without a jury; that on said trial, Humphrey insisted that this defendant, before and at the time of said assignment to Chase, had been paid and satisfied by Humphrey for his services and disbursements in said suit against Jackson, and that this defendant had obtained such payment and satisfaction by the purchase of Jackson's supposed life estate, on this defendant's own account and at his risk, and not in any respect for the benefit of Humphrey; that Chase, on said trial, insisted that this defendant did not make such purchase as alleged by Humphrey, but solely as the attorney and trustee of said Humphrey, and on his account, except so far as this defendant had such lien on the proceeds of the sale as before alleged, and at Humphrey's risk and for his benefit; that such proceedings

were thereupon had, that the county court determined and adjudged in favor of Chase against Humphrey, upon all matters put in issue as well by the said pleadings as by the said proofs and allegations, and did thereby determine and adjudge that the said Chase recover; and Chase in and by the judgment of the said county court, did recover in the said action the said sum of $90.84 for his damages, together with $48.01 for his costs and disbursements; that of that sum $80.84 were for and on account of this defendant's said services and disbursements in and about the suit brought by Humphrey against Jackson; that as well the plaintiff as Humphrey had notice of said judgment; that the same remained in full force, not vacated or reversed; that said trial was virtually between this defendant and Humphrey, and that this action is virtually between this defendant and Humphrey, and that the substantial issue in this action was whether this defendant purchased Jackson's said interest as alleged by Humphrey, or as alleged by this defendant on said trial. And this defendant, in and by such supplemental answer claimed that such determination, adjudication and judgment of the county court, barred and estopped the plaintiff from further maintaining this action, and demanded judgment for his costs and disbursements.

This cause came on to be tried before his honor Justice WELLES and a jury, at a circuit court, in the county of Livingston, on the 4th day of May, 1854. Before proceeding to offer evidence it was mutually admitted by the parties, that this defendant acted as the attorney for Humphrey in said Jackson suit, and as such issued the execution on which the sale stated in the complaint took place. The plaintiff's counsel then offered in evidence the judgment roll in said Jackson suit. By this roll it appeared that Humphrey, by this defendant as his attorney, recovered a judgment against Jackson, on the 27th November, 1851, for damages $55, costs $84.38, which was on that day duly docketed in the office of the clerk of said county of Livingston. The plaintiff's counsel next offered the execution issued on said judgment, with the indorsement thereon. The execution was in the usual form, and by an indorsement thereon, made by said Doty,

Chappell *v.* Dann.

as deputy of the plaintiff, it appeared to have been returned satisfied, on the 14th of February, 1852, and filed March 25, thereafter, in said clerk's office. William Doty was then sworn as a witness, and deposed as follows: "The plaintiff was sheriff of the county of Livingston, at the time in question, and I was, during the same period, his deputy." The execution being placed in the hands of the witness, he stated: "I made the sale stated on said execution, on the 13th day of February, 1852, and made two certificates of said sale, one of which I filed in the said clerk's office, the other I delivered said defendant, Dann, who bid off the premises at $154.27, which he did not pay." Being cross-examined by the defendant, the witness testified: "The execution called for $139.60 and interest. The same, with the sheriff's and printer's fees required $154.27, to satisfy it. The defendant, Humphrey and Jackson consulted together, and the defendant then said, go on and sell; at the sale, Humphrey and Jackson and this defendant were all present, standing by and hearing; there was one bid by some one, of $40, and another by this defendant of $154.27; no more bids made. After the property was struck off, this defendant said to me, you had better give the certificate of sale to me; the words were, you had better give the certificate of sale to Amos Dann. I directed this suit at Avon, on Chappell's instance; I was threatened to be sued by said Humphrey, and on that account I sued the defendant in this cause; I do not remember that defendant stated after the sale that Jackson was going to get a loan of money on the property, and when he did we should all get our pay." Being further examined, in chief, he testified: "After the sale I spoke to the defendant about the costs: he said it would be fixed up and costs would be paid soon; he would pay the printer's fees in a few days; Jackson died in a week or two after the sale." Again cross-examined he stated: "Jackson was not responsible—was good for nothing."

The plaintiff here rested, and the defendant moved for a non suit, on the ground that it did not appear that said defendant bid off the premises on his own account, and that no facts sufficient to entitle the plaintiff to recover had been proved;

which motion the court refused to grant, and the defendant thereupon excepted.

The defendant called as a witness John Parsons, who deposed as follows, viz: "I was a near neighbor to Jackson; he died the last day of March, 1852; I was present at an interview between the defendant and Humphrey, at defendant's office, in Avon, eight or ten days after Jackson's death." Here the plaintiff's counsel interposed and objected to the witness continuing, and the court allowed the objection. Whereupon the defendant proposed to prove by said Parsons, that at the interview in question, between Humphrey and Dann, said Humphrey stated that this defendant had purchased the property of Jackson, as his, Humphrey's attorney; that Jackson had since died; and that by his death he, the said Humphrey, had lost his debt; that Jackson, at his death, was about making a loan, with the aid of his wife, on her property, and if he had completed it he, the said Humphrey, this defendant (his attorney,) and the sheriff, would have all got each his pay; that Humphrey stated that he had lost his debt, but did not care about that, as he had vindicated his character; which evidence was objected to by the plaintiff's counsel as hearsay, and excluded by the court, to which the defendant again excepted. The defendant then offered in evidence the judgment roll and an execution returned unsatisfied, against Humphrey, in said suit of Chase against Humphrey, and generally to prove the facts stated in said supplementary answer, which was objected to by the plaintiff's counsel as impertinent, and excluded by said judge, to which the defendant also excepted. The defendant then offered to show the insolvency of Humphrey; that said execution had been recently returned wholly unsatisfied against him, and was on file in the clerk's office of said county, in said action brought by Chase, which evidence was also objected to as impertinent, and excluded by the court on that ground, and the defendant excepted. William Doty was further asked by the defendant, if A. A. Hendee, Esq., read him a letter from the defendant, on the subject of the said sale, and answered, that Hendee did read him such letter,

Chappell *v.* Dann.

but·that he did not remember what it contained. The defendant then proposed to prove the letter to.be lost, but the proof of loss was waived by the plaintiff. A. A. Hendee testified as follows: "In the summer, or later, of 1852, I had an interview with Wm. Doty, at Geneseo, after this suit had been commenced. I had received a letter from the defendant, enclosing some papers in relation to a settlement of the suit, and stating, that at the sale of Jackson's property, it was declared by said defendant to Doty and Humphrey, that Jackson, with the assistance of said defendant, was going to make a loan on the property, shortly, and that when he raised the money then Humphrey would get his pay, the sheriff his, and the defendant his. Said letter contained a request that I should read this statement to Doty ; at said interview I did read it to him, and Doty answered that the statements in the letter were correct." The defendant then offered to give in evidence an ante-nuptial contract, between said Jackson and his then intended wife, together with a trustee, made and executed before marriage, by which Jackson had covenanted that he would, after marriage, convey all his interest in the lands to said trustee, to be held by him in trust for said wife and any children she might have by said Jackson, and the rents, income and profits thereof for her said children's support, to be paid to her ; and to show that at the time of such sale said agreement was in the hands of the defendant, and that the defendant and Humphrey both knew that any purchase that might be made of Jackson's said interest was subject to be at any time defeated by the enforcement, by said wife, of the contract. This evidence was objected to as immaterial, and excluded by the court, and the defendant excepted. Whereupon the defendant insisted that the sum of $84.38, parcel of said judgment, and being the costs against said Jackson, could not be recovered of this defendant; he at the same time offering to show that they belonged to him, the defendant ; which was objected to by the plaintiff's counsel, and excluded by the court. Whereupon the defendant renewed his motion for a nonsuit, on the same grounds as before, which the court denied. To the decision of the court, on said motion for

---

Chappell *v.* Dann.

---

a nonsuit, the defendant also excepted. Under the charge of the court, the jury, without leaving the box, found for the plaintiff $167.42. The court directed the clerk to enter an order that no judgment be entered on said verdict, and that the case go directly to the general term for argument and further consideration, on a case or bill of exceptions.

*J. W. Kershner,* for the plaintiff.

*A. Dann,* defendant, in person.

*By the Court,* JOHNSON, J. The defendant bid at the sale, in his own name, and took the certificate from the plaintiff as sheriff, in his own name. The presumption therefore is, that the purchase was on his own account; and the action was properly brought against him to recover the amount of the bid. (*Beardsley* v. *Root,* 11 *John.* 464.) The refusal of the judge to nonsuit was proper. The cause of action being thus made out, could the defendant, by way of defense, prove by parol that he purchased as the agent, merely, of the plaintiff in the execution, and not on his own account ? The proof offered and excluded, was the admissions of the plaintiff in the execution, made after the sale and before the commencement of the action. It is a general rule that parol evidence can never be admitted for the purpose of exonerating an agent who has entered into a written contract in which he appears as principal. But if parol evidence was admissible, that offered was mere hearsay. The plaintiff, in the execution, was not a party to the action, and was a competent witness for the defendant, on the trial. (*Benjamin* v. *Smith,* 4 *Wend.* 332.) It appears from the evidence, that the plaintiff in the execution had demanded the money of the sheriff, and threatened to sue him unless it was paid, and that the sheriff brought this action to protect himself. It will be seen, therefore, that the plaintiff in the execution was in no sense a party to this action. His claim was exclusively against the sheriff. The exception to the ruling in this respect was not well taken.

Chappell *v.* Dann.

The learned justice was also right, I think, in shutting out the judgment and execution in the suit of *Chase* v. *Humphrey*, and the other matters set up in the supplemental answer. The evidence was not competent for the purpose of establishing the fact that the defendant purchased as agent of the plaintiff in the execution, because the action there was between persons neither of whom are in any respect parties to this action. Nor was it competent for the purpose of establishing the lien of the defendant as attorney, because if he had one, in the first instance, he lost it irrecoverably when he assigned his demand for the services, to Chase. The judgment, when recovered, for the services, belonged to Chase, and if the defendant had purchased it, and was the owner at the time of the trial, the lien, if there was one originally, was not restored. And as a set-off or counter-claim, clearly it was not available. I do not intend to hold that there was a valid lien in favor of the defendant as attorney, originally. It is unnecessary to discuss or decide that question, as it must be obvious that such lien, if it existed, was destroyed by the assignment of the claim, and could not be revived by a subsequent purchase of the judgment.

New trial denied.

[MONROE GENERAL TERM, September 3, 1855. *Welles, Selden* and *Johnson*, Justices.]