## The Auburn City Bank *vs.* Leonard.

An agreement, by one person, to "cancel" the indebtedness of another, to a third person, is an agreement to pay it. The agreement to cancel must be held to include a promise to do whatever shall be necessary to effect the cancellation.

There is a class of cases in which it has been held that an instrument which is apparently the personal obligation of the one by whom it is signed may, by parol, be shown to be the obligation of another, for whom the person signing was acting as agent. But the rule applies, it seems, exclusively to cases in which it appears in the body of the instrument, or from the signature of the person by whom it is executed, that he was acting for another, and intended to bind such other, and not himself personally.

In such cases, where the party to whom the obligation is given understands the character in which the party giving it is acting, parol evidence may, it seems, be given to show that the maker, or obligor, was acting in the matter as agent merely.

But where there is nothing of that kind either in the body of the instrument, or attached to the signature, to indicate that it was intended to be any thing other than a personal obligation, such evidence is inadmissible.

Where a promise made to A., to pay to B. a debt due the latter, has been adopted by B., it is regarded in law as a promise made to him.

Parol evidence should never be allowed, to create an ambiguity where none exists. *Per* Johnson, J.

The proper office of construction is to ascertain and determine the intention of the parties. And this is arrived at by considering the character in which the party undertakes; the nature and subject of the undertaking; and the terms employed in the instrument. *Per* Johnson, J.

APPEAL by the defendant from a judgment entered on the report of a referee. The complaint alleged that on the 4th of March, 1859, one Thomas W. Smith was indebted to the plaintiff, as maker of certain promissory notes, set forth and described, which had been discounted for him by, and were then held by, the plaintiff; also upon two drafts before that time drawn by said T. W. Smith and discounted and owned by the plaintiff. That the drafts were duly presented for payment, at maturity, and protested for non-payment. That all of the promissory notes were then due, and the notes and drafts were all unpaid. That on the said 4th day of March, the said Thomas W. Smith, being so indebted to the plaintiff, and being desirous to pay the same

on that day, made and entered into an agreement, in and by which the defendant for a valuable consideration to him paid, as hereinafter expressed, by the said Thomas W. Smith, undertook, and then and there promised and agreed to and with said Smith, to pay and cancel the said indebtedness of Smith to the plaintiff, and then and there executed and delivered to the said Thomas W. Smith, an agreement in writing, of which the following is a copy, to wit:

"Received of T. W. Smith, a note of five thousand, (dollars meaning) made by G. W. Leonard, also an assignment by said T. W. Smith of his (ten shares) stock in the Auburn City Bank, value five hundred dollars; also said T. W. Smith's order on David B. Smith, of Port Byron, for seven hundred dollars in bills of the Planters and Mechanics' Bank, of Dalton, Geo., as also six hundred and fifty-seven dollars, bills of the same bank, now at the Auburn City Bank, for which, as above enumerated, I agree to cancel said T. W. Smith's indebtedness to the said Auburn City Bank, and also his, the said Smith's indebtedness to Jonas White and H. H. Bostwick, it being in gross sixty-seven hundred and eighty dollars or thereabouts. G. W. LEONARD."

New York, March 4, 1859.

And the plaintiff averred that the said notes and drafts constituted the indebtedness mentioned in the said written agreement. And that by reason of the premises, a right of action had accrued to the plaintiff against the defendant for the amounts of the said notes and drafts, and interest thereon, and expenses of protesting the same; and he demanded judgment for the amount thereof, with interest and costs.

The defendant, by his answer, alleged 1. That he did not, as is set forth in the complaint, receive from Thomas W. Smith, or any other person, any consideration whatever for the undertaking, promise and agreement set forth in the complaint; that he did not undertake, promise and agree to and with the said Smith, to pay and cancel the said indebtedness to the plaintiff; and that he did not execute and deliver to the

said Smith any agreement in writing, except as was thereinafter set forth.   2. And for a second and further defense, the defendant alleged that on the said 4th of March, 1859, he was, and for several years previously thereto, had been the cashier and general agent of the said The Auburn City Bank; that the said Thomas W. Smith and David B. Smith and R. S. Torrey were, and had suddenly become, insolvent and unable to pay the said indebtedness to the said The Auburn City Bank, and sudden and unforeseen exigencies had arisen, which made it the duty of the defendant, as such cashier, to endeavor to procure some sort of security or property from the said Smith and Torrey, and to prevent, if possible, the whole of the said debt from becoming a total loss to the said bank; whereupon the defendant, in conjunction with the president of the said The Auburn City Bank, on or about the 2d day of March, 1859, went to the city of New York, where the said T. W. Smith and the said Torrey were, and entered upon negotiations with them, with a view to obtain something from them towards the said indebtedness.   And after such negotiations, between the said president and the defendant, as cashier, together representing the said The Auburn City Bank, and the said T. W. Smith and R. S. Torrey, a certain agreement was made by and between the said The Auburn City Bank of the one part, and the said Smith and Torrey, of the other part; by and in consideration of which the said Smith was to transfer to the defendant, so being such cashier, for the use and benefit of the said bank, certain shares of stock or interest in Planters and Mechanics' Bank of Dalton, in the state of Georgia, and also certain shares in the said The Auburn City Bank with certain bank bills of the said Georgia bank; and the said The Auburn City Bank was to cancel and release all the indebtedness set forth and described in the said complaint, in consideration thereof, and also to pay or cause to be paid certain demands, to the amount of $250 or thereabouts, due to one Jonas White and one H. H. Bostwick, from the said T. W. Smith; and likewise to pay to him, the

said T. W. Smith, in addition thereto, the sum of two hundred dollars; all which agreement, excepting the $200 aforesaid, was encumbered with the condition, that the consent of certain parties owning interest in the said Georgia bank, should first be obtained to the transfer of the said stock to the said The Auburn City Bank. And that in pursuance of said agreement, and until the said consent should be obtained, the said stock in the Georgia bank was transferred to the defendant; and also for the further reason that it then appeared doubtful, both in respect to policy and lawful power, whether the said The Auburn City Bank should or could hold or own an interest in a foreign bank. And in further pursuance of the said agreement, the stock in the said The Auburn City Bank, and also an order on certain parties for the bank bills aforesaid, was duly delivered to the defendant, all to be held by him in trust as between the parties to said agreement, until the same should become absolute, or be rescinded, as the aforesaid contingency or condition might be determined. And that it was agreed, that upon the consummation of the said agreement, the notes and drafts set forth in the complaint should be canceled and delivered up to Smith and Torrey; and the defendant should upon that event be at liberty to transfer the said stocks and property to the said The Auburn City Bank, or to hold the same absolutely for the benefit and at the disposal of the said bank, as it might order and direct. And in further pursuance of said agreement, the defendant, acting as the said cashier and agent, did pay to the said T. W. Smith the said $200; and the defendant, after the said agreement was concluded upon, having received the said securities at the request of the said Smith, and as and for a private receipt or memorandum for him, the said Smith, and not as a contract to bind this defendant individually, hastily wrote the said receipt or paper writing (the same as is purported to be set forth in the complaint) bearing date March 4, 1859, and handed the same to the said Smith, in whose possession it has ever since remained, and still remains,

Auburn City Bank *v.* Leonard.

But the defendant averred that the said paper writing or receipt was not executed nor received, nor was the same designed by him to set forth or embody the agreement which had been made, nor was the same understood by any of the parties concerned to represent or set forth the true agreement which was made. And the said defendant further alleged that he was informed and believed that afterwards, but at what precise time he was unable to state, the consent of the said parties so owning interest in the said Georgia bank, having been obtained, the plaintiff ratified and confirmed the said agreement, and received the transfer of the said stocks and bank bills, and yet holds and owns the same. And this defendant further alleged that throughout the whole of that transaction he acted in good faith, as agent and cashier of the said bank and with a view to its interests alone.

The cause having been brought to trial before the referee, to whom it was referred, the referee after hearing the proofs and allegations of the parties, found as matters of fact: That on the 4th day of March, 1859, one Thomas W. Smith was indebted to the plaintiff in the sum of $6533.33, besides interest and fees of protest, upon four notes made by said Smith and indorsed by David B. Smith, amounting to $5500, and upon two drafts drawn by said Smith, and accepted by one Reuben S. Torrey, for his accommodation, amounting to $1033.33. That said Tho's Smith and David B. Smith having become embarrassed in their circumstances, the defendant, who was then cashier of said Auburn City Bank, and Franklin L. Sheldon, the president thereof, proceeded to New York where said Smith was then staying, for the purpose of procuring additional security for said indebtedness, or otherwise arranging the same. That after arriving in New York, said defendant and said Sheldon agreed with said Smith upon a settlement of his indebtedness as follows : (1.) Said Smith procured a transfer to said defendant of one tenth of the capital stock of the Planters and Mechanics' Bank of Dalton, Georgia, at the price of $5000. (2.) The

transfer to him of $500 of the capital stock of said Auburn City Bank. (3.) Orders for $1357 of the bills or currency of said bank of Dalton, $700 of which was then in the hands of David B. Smith, and $657 was then in the said Auburn City Bank. All of these transfers were made nominally to said defendant individually, it being arranged between said defendant and said Sheldon that the name of the bank was not to appear in the transfers, and thereupon the said defendant executed and delivered to said Smith, the receipt or instrument set out in said complaint. The said receipt was drawn up by the defendant, and its terms understood by him and the other parties to the arrangement at the time of its execution. It was part of said arrangement that the consent of other parties interested in the Bank of Dalton should be procured to the transfer of said one tenth to the defendant, and such consent was afterwards procured, of which the defendant and plaintiff had notice. It was agreed at the time, between Sheldon and the defendant, that the stock of the Auburn City Bank should be transferred by the defendant to the plaintiff, and the same was soon afterwards transferred to it, and is now held by plaintiff. It was also agreed between them, that the plaintiff should pay $200 in cash, which Smith required before he would make the arrangement above specified; which amount was paid by the defendant for the bank. It was the design of all the parties to said arrangement, that when consummated it should be a full discharge of Smith from his indebtedness to said bank, although the notes and drafts were not and have not yet been delivered up to Smith, except the name of Torrey was erased upon the drafts; and the plaintiff has received nothing from said arrangement except the said scrip of $500 of its own stock. The defendant has not transferred nor offered to transfer the stock of said Bank of Dalton or the bills of said bank, received from Smith as aforesaid.

Upon the facts the referee found, as matter of law : " 1. It is not competent to contradict the written instrument by

Auburn City Bank *v.* Leonard.

parol testimony, or to show by such testimony that the defendant did not intend to bind himself, individually, by the receipt or instrument executed as aforesaid by him.

2. The plaintiff is therefore entitled to receive of the defendant, the amount of T. W. Smith's indebtedness to the plaintiff, after deducting $500, the value of its own stock, and the said sum of $200, so paid by the defendant as above stated, leaving the sum of $7407.78, (seven thousand four hundred and seven dollars and seventy-eight cents,) for which sum the plaintiff is entitled to judgment."

The defendant excepted to the findings of the referee. He also excepted to the report because the referee had declined to pass upon the material issues of the cause, viz :

1. Whether or not the said defendant did undertake, promise or agree to and with said Smith *to pay* and cancel the said indebtedness. 2. Whether the defendant received any consideration whatever for the undertaking, promise and agreement set forth in the complaint. 3. Whether or not the agreement then and there made, was between the plaintiff, represented by the defendant as cashier and said Sheldon as president thereof, of the one part, and said T. W. Smith and Torrey of the other part. 4. Whether or not each and every of the transfers made by Smith and Torrey or either of them upon said agreement, were made really to the said defendant for the use and benefit of the said plaintiff, and whether they were received as such by the defendant. 5. Whether or not the said plaintiff, the Auburn City Bank was, by the true agreement then and there made, to cancel and release the said indebtedness set forth in the complaint. 6. Whether or not the said paper writing or receipt was designed, executed or received by the parties thereto to set forth or embody the agreement which had been made ; or whether it was intended or understood by any of the parties concerned, to represent, or to set forth the true agreement. 7. Whether or not the defendant throughout the whole of that transaction acted in good faith as agent and cashier of the said bank

and with a view to its interest alone, or whether he dealt on his own account individually.

*Cox & Avery* for the appellant.  The principal questions here presented are :  1st.  Whether, when a third party (the bank) sues on an apparent undertaking of. A. made in his. contract with B. the defendant is (as to the plaintiff) *estopped* by the apparent undertaking, and forbidden to show the truth in his defense ?   2d.  Whether the word *"cancel,"* used in such an agreement, can be held to mean *"assume and pay ?"*   3d.  When the *parties* to an agreement *admit and agree as to what was intended,* the plaintiff, being a third party, and a stranger to it, can insist upon and maintain against one of the parties a meaning and construction never intended by the parties ?   Or, whether, *in such case,* the defendant may contradict, impeach or overturn the apparent undertaking to *cancel,* or even to pay the plaintiff ? 4th.  Whether, when in truth the defendant acted only as agent of the plaintiff in the business, yet assuming ostensibly to act in his own. name, and that' for the interest and protection of his principal, *such principal* can turn around and in the face of all equity, hold him to his apparent individual undertaking ?

We are to assume in this case, that the defendant Leonard acted in fact throughout, only as agent, and that he did not intend to bind himself at all *to his· principal*; that this transaction was in fact between the bank, and Smith and Torrey ; because the evidence tends strongly to establish it. Both parties so understood it at the time ; and the referee *has refused to decide* these issues raised by the pleadings, *holding the facts to be immaterial.*

It is not intended here to controvert the established rule that when parties commit an agreement to writing it shall be held to be the highest evidence of the agreement, and (as between them) to exclude all parol evidence to alter, vary or

contradict it ; although this rule has many modifications and exceptions.    But we claim,

I. This rule obtains in reference to all questions arising between *the parties to the agreement;* but never prevents *strangers* from contradicting and even overthrowing the writing by parol evidence, when it is introduced against such strangers.    (3 *Stark. Ev.* 1017, *note* 1, 1018, 1043, 1046 *to* 1053. 2 *id.* 635.    1 *Greenl. Ev.* § 279.    *Parsons' Merc. Law,* 24, *note* 1.    *Addison's Contracts, p.* 2, *note* 1.    *Id.* 839, 840. *Cowen & Hill's Notes,* 1436, 1438, 1444-8.    *Gresley's Eq. Ev.* 288.    *Whitbeck* v. *Whitbeck,* 9 *Cowen,* 270.    *Rex* v. *Laindon,* 8 *Durnford & East,* 382.    *Champlin* v. *Butler,* 18 *John.* 169.    *Evans* v. *Wells,* 22 *Wend.* 344, *&c. overruling Stackpole* v. *Arnold,* 11 *Mass.* 27.    *Mech. Bank* v. *Bank of Columbia,* 5 *Wheat.* 327.    *Taylor* v. *Baldwin,* 10 *Barb.* 587.)

1. And because *estoppels must be mutual, even parties* as against strangers, may vary, contradict, &c. their own writings.    Even in case of deeds.    (*Rex* v. *Laindon,* 8 *Durnf. & East,* 382.    *Rex* v. *Scammonden,* 3 *T. R.* 474.    *Champlin* v. *Butler,* 18 *John.* 169.    *Cowen & Hill's Notes, No.* 965. *Evans* v. *Wells,* 22 *Wend.* 344.)    Opinion by Verplanck, sustained by court of errors.    (1 *Phil. Ev.* 387, *8th Eng. ed. Johnson* v. *Blackman,* 11 *Conn.* 351, 353, 342, 357.    *Fuller* v. *Acker,* 1 *Hill,* 475-6, *and cases cited.    Johns* v. *Church,* 12 *Pick.* 559.    *Sparrow* v. *Kingman,* 1 *Comst.* 250 ; *overruling* 2 *Hill,* 303 ; 17 *Wend.* 164.    *Gaunt* v. *Wainman,* 3 *Bing. N. C.* 69.    *Coke Litt.* 352, *Estoppel.    Jewell* v. *Harrington,* 19 *Wend.* 471.    *Parsons' Merc. Law,* 24, *note* 1 *and cases.    Right* v. *Bucknell,* 2 *Barn. & Ad.* 278.)

As to who are *" strangers,"* we insist, every body except parties and privies.    (*Kingman* v. *Sparrow,* 1 *Comst.* 250. *Jewell* v. *Harrington,* 19 *Wend.* 471.    *Barker* v. *Binninger,* 14 *N. Y. Rep.* 271.    The sheriff may disprove his own return.    (*Roberts* v. *Austin,* 5 *Whart.* 313.)

2. And in case of less solemn and deliberate instruments like this receipt, *a fortiori.*    (3 *Stark. Ev.* 1051.)    The rule

as stated by Starkie is, " Next where *one of the contending parties* was not a party to the record or other instrument. * * * Here, however admissible, the writing is not conclusive evidence, and parol evidence is admissible to prove the fact, in contradiction of the record." " It seems to be a general rule, that in all these cases parol evidence of the facts would still be admissible; in other words, the instrument could never conclude the party by estoppel, or otherwise." (*Addison on Cont.* 3, *and cases. Skaife* v. *Jackson,* 3 *Barn. & Cr.* 423. *Lampson* v. *Coke,* 5 *Barn. & Ald.* 611. *Stackpole* v. *Arnold,* 11 *Mass.* 27. *Graves* v. *Key,* 3 *B. & Adol.* 318. *Berkley* v. *Watling,* 7 *Adol. & Ellis,* 22. *Farrar* v. *Hutchinson,* 9 *id.* 641. *Evans* v. *Wells,* 22 *Wend.* 344. *Scovill* v. *Griffith,* 2 *Kern.* 509.)

3. And because Smith (to whom this receipt was given) *knew at the time,* that the whole was done by Leonard in fact as cashier and agent of the bank, Leonard might prove that fact in his own defense, even in an action *by Smith against him* on this receipt and contract. (2 *Cowen & Hill's Notes,* 1465 *and cases. Brockway* v. *Allen,* 17 *Wend.* 41. *Randall* v. *Van Vechten,* 19 *John.* 60. *Chit. on Cont.* 106 *and cases. Champlin* v. *Butler,* 18 *John.* 169. 5 *Whart.* 298, 313.)

4. With stronger reason may Leonard do this when perfidiously attacked by his principal. " Indeed it may be asserted as a general rule, that in all cases where an agent has contracted within the sphere of his agency, and the principal is not bound by the form of the contract at law, a court of equity will enforce it against the principal, upon principles *ex æquo et bono.*" (*Story's Agency,* § 162 *and cases.*) And this, although the form of the contract may add the personal responsibility of the agent to the rights of the other party. (*Id. p.* 153, *note. Evans* v. *Wells,* 22 *Wend.* 345.)

5. Nor is it sound *for the principal here* to deny that this contract was within the sphere of Leonard's agency; they might deny it as against Smith; but it is a sufficient answer *to the bank in this action,* for Leonard to say that he did it

Auburn City Bank *v.* Leonard.

in fact or attempted to do it as their agent, and not otherwise; and they might ratify or refuse, at their option; least of all can they turn upon him, to ruin him, for an honest effort made for their interest. In all these cases, where the *real* party is charged on the contract, by parol proof, notwithstanding the writing signed by the agent individually, if the *principal* should afterward sue *that agent* on the contract, could not he be allowed to show by parol that the plaintiff and not he the agent was in fact the contracting party? (*Merchants' Bank* v. *Bank of Columbia*, 5 *Wheat.* 327. *Dykers* v. *Townsend*, 24 *N. Y. Rep.* 61. *Kymer* v. *Sowercrop*, 1 *Camp.* 109. *Norfolk* v. *Worthy*, *Id.* 337. *Skinner* v. *Stocks*, 4 *Barn. & Ald.* 437.) *Sharp* v. *Emmett*, (5 *Whart.* 288,) is probably in point.

II. Each one of the conclusions of law of the referee is erroneous. *The first:* because he held the rule the same *in this action* between Leonard and a *stranger* to the writing, (the bank) as if it had been between Leonard and Smith. *The second:* for the same reason. *The third:* in holding that a cashier's undertaking to " CANCEL" certain paper held by his bank, was a personal undertaking on his part *to assume and pay that paper to the bank.* " CANCEL." To deface; properly to make cross bars or lattice work; hence to make cross lines on writing. 1. To cross the lines of a writing and deface them; to blot out or obliterate. 2. To amend or destroy, as to *cancel* an obligation or a debt. (*Webster's Dict.*) The same, substantially, by *Worcester.* 1. This difficulty of perverting an apt and significant word was felt by the counsel in drawing the complaint. It was necessary to aver that the defendant " *undertook* TO PAY *and cancel.*" But the proof nowhere supports the averment: nor has the referee been able to support the averment in his report. And to this our exception is well taken. 2. When the fact appears by the proof, that Leonard was in fact *cashier* of the bank, and was acting for it on this occasion, the word cancel is seen to have its true and specific meaning in this case. (1.) There

is no proof in the case of any other meaning. (2.) No ambiguity either latent or patent. (3.) No authority under the laws of evidence to pervert or change the word. · 3. The referee has found that the paper receipt controls and cannot be varied; that the parties understood its terms; that Leonard bound himself individually *to cancel;* and that *therefore* the bank is entitled *to receive* from him, &c., not that the defendant undertook *to pay.* This is a *non sequitur.* (4.) To say that the debts to White and Bostwick (of $200) were to *be paid,* that *therefore* the $6533 was also to be paid, is to confound the *principal* and subject matter with the *incident.* In drawing the receipt Leonard had evidently got past the principal, before the incident occurred to him. 5. But if the word *cancel* can possibly be regarded as an ambiguous word, the question is presented—in what sense is it to be taken ? *In the sense in which Leonard apprehended it to be understood by Smith at the time.* (2 *Kent,* 557. *Gunnison* v. *Bancroft,* 11 *Verm. Rep.* 493. *Barlow* v. *Scott,* 24 *N. Y. Rep.* 40.· *Gresley's Eq. Ev.* 286. *Pars. Merc. Law,* 14, 15, *and cases. Addison's Cont.* 845 to 849. 3 *Starkie's Ev.* 1036, 1038.) And the attending circumstances and occasion are well regarded for this purpose. (*Same authorities.*) And that sense is obvious from the proof. · And yet the referee has held the true import of the word *cancel,* used in such circumstances, to be *" to pay."* This does violence as well to the writing, as to all the evidence.

III. If it was the interest of the bank to ascertain and enforce the *real agreement,* it is obvious that they would be entitled to contradict a sham or mistaken paper, by parol evidence, and show the truth. (1 *Greenl. Ev.* § 279 *and cases.* 2 *Starkie's Ev.* 1051. *Addison on Cont.* 840. *Evans* v. *Wells,* 22 *Wend.* 344. *Also cases cited under* 1st *Point.*) Take this case : A. sells a horse to B. for $150, B. to pay cash $100, and A.'s note held by the bank, at its maturity for $50. A. gives B. a bill of sale of the horse rated $100, receipted in full. The note afterwards matures and is

not paid.   The bank sues B. on the promise to A.   Cannot the bank, admitting the writing to be competent evidence, yet impeach it and show it to be mistaken, incomplete or false; and establish the *true contract* by parol evidence ? (*Taylor* v. *Baldwin,* 10 *Barb.* 587, *and cases cited.*)   In such case the action would be founded upon the *true contract,* and not upon the sham.   We have seen that this receipt signed by Leonard was a *sham,* and was intended to be, for reasons supposed by the parties to be sufficient at the time. And the *sham* was in respect to the vital point in this action, *the true party contracting;* it was thought best that the bank should *not appear to be* connected with the Georgia bank.   This is admitted by every person present, and the referee has so found, substantially.

IV.   That this paper should be thus made, was a subordinate and collateral *part* of *the true agreement,* and the object of it, conceded by all the parties, was to protect this very Auburn City Bank from apprehended contingencies.   And this was *understood* at the time.   1. This brings it within the rule as laid down by Chitty.   (*Cont.* 109.)   " It may frequently happen that a written memorandum was not intended to contain, and does not purport in itself to comprise all the terms of a contract. * * * Where writing is not required, it appears that oral proof of a distinct parol contract relative to terms not noticed in the writing, and showing that the writing was confined to one branch of the transaction, may be received."   So in 3 Starkie's Evidence, 1040.   " Where, however, the nature of the subject matter does not require the agreement to be in writing, although a presumption arises, in the absence of proof to the contrary, that the parties expressed in writing the whole of their intention in respect of the subject matter, and intended the written terms to operate as an agreement; yet that presumption may, it seems, be rebutted by express evidence that what was so written was intended as a mere memorandum of one part, or branch, only, of a general agreement, and was not intended to operate ab-

solutely and unconditionally; or it may be shown that a parol contract was made independently, wholly collateral to, and distinct from a written one made at the same time." "In such cases the parol evidence is used, not to vary the terms of the written instrument, but to show, either that it is inoperative as an entire and independent agreement, or that it is collateral and irrelevant." This rule is stated as to litigation between the parties to the paper. 2. The ENTIRE CONTRACT was plainly this: (1.) Smith and Torrey's debt to the bank was to be canceled. (2.) White and Bostwick to be paid $250 by the bank. (3.) Smith to receive $200 in cash from the bank. (4.) Smith to transfer to Leonard for the bank, the Georgia stock, and to the bank the $500 stock and currency. (5.) This paper receipt to be made, to make the transaction *appear to be* between Leonard and Smith, in order that the bank might not *appear to be* concerned in the matter. (6.) The whole to be conditional, depending on the consent of the other proprietors of the Georgia bank. 3. This state of facts, patent as it is from the testimony, is ignored by the referee, who exalts the sham paper into the entire contract, and will not suffer the facts to exist; holds them irrelevant and immaterial. So we see this bank for its own purposes, making a true contract and a *sham* paper as a part of it; and now asserting the *sham* as the true contract, in order to rob its own agent, claiming that he is estopped by it.

V. Leonard received *no consideration* whatever for the alleged promise. 1. All the books hold, that (there being no estoppel) the want of consideration may be shown, even as between the original parties; and the bank here has no stronger equities. The consideration here went all to *the bank,* and was so intended at the time. 2. And this defense is set up in the answer; is proved in the case; but held *immaterial* by the referee. This Georgia stock was to be taken by Leonard *for the Auburn City Bank.* It should be borne in mind that Leonard has never had any *scrip* or *stock* of

Auburn City Bank *v.* Leonard.

this Georgia bank. The $500 Auburn City Bank stock "Smith was to assign to the bank," and did so. The Georgia currency $1357, was left in the bank vault, and afterwards sent to Chicago by the cashier, to *Sheldon the president,* and has remained in control of the bank.

*Wm. Allen,* for the respondent. I. The execution of this instrument by the defendant, and its delivery by him to T. W. Smith, are not denied by the answer. It was drawn up by the defendant, and its terms were understood by him and the other parties to the arrangement, at the time of its execution.

II. That instrument is a plain, unambiguous agreement, for the consideration therein recited, (paid by Smith, to the defendant Leonard,) to pay the demands of the plaintiff against said Smith. Those demands amounted at the date of the judgment to $7433.30.

III. The question of its reformation was tried in the cross suit, and the judgment of the court, upon the facts presented by the pleadings in that suit, was against its reformation, and by necessary consequence, establishing its validity as a contract, according to its plain import and meaning, and subject to the ordinary rules of interpretation.

IV. The court will not permit two trials of the same issues. The defense set up in the answer in this suit, having been tried in the cross suit, and judgment upon all the issues having been rendered, no re-trial will be permitted in this action. The judgment in the cross suit against the plaintiff entitled the plaintiff in this action to judgment.

V. This contract gave the plaintiff a right of action against the defendant; and the judgment is right. (*Barker* v. *Bucklin,* 2 *Denio,* 45. *The Del. and Hud. Canal* v. *Westchester Co. Bank,* 4 *Denio,* 97, *and cases cited.*)

*By the Court,* JOHNSON J.   If the instrument on which the action was brought was in legal effect a promise by the defendant to pay the indebtedness of Smith to the plaintiff, personally, the action is well brought and the judgment must be affirmed, unless there was some erroneous ruling in the course of the trial. (*Burr* v. *Beers,* 24 *N. Y. Rep.* 178. *Lawrence* v. *Fox,* 20 *id.* 268.)

The terms of the undertaking are "I agree to cancel said T. W. Smith's indebtedness to the said Auburn City Bank." This is not in explicit terms a promise to pay the indebtedness, but if the undertaking is, as upon its face, and by its terms, it would seem to be, the individual personal undertaking of the defendant, it can be regarded as nothing else than a promise to pay.

As a stranger having no interest in the indebtedness, the only way in which he could cancel it would be by payment; and the agreement to cancel must be held to include the promise to do whatever should be necessary to effect the cancellation.   To cancel is to blot out or obliterate; to annul or destroy, and as this could only be accomplished lawfully by a third person, by payment, it is clearly an undertaking to pay.   By no other construction can any effect be given to the obvious intention of the parties; and the written undertakings of parties are always to be construed so as to be upheld and enforced, instead of rendering them nugatory, if it can be done without violence to the terms employed.   The proper office of construction is to ascertain and determine the intention of the parties; and this is arrived at by considering the character in which the party undertakes, the nature and subject of the undertaking, and the terms employed in the instrument.

If it appeared clearly, or could legitimately be made to appear, that the defendant in the transaction was acting solely as the agent of the plaintiff, and entered into the undertaking in that character only, doubtless an entirely different meaning should be given to the terms "to cancel."   In

that case the terms would obviously import simply an undertaking by the plaintiff to accept whatever its agent had received on its account and in its behalf, in satisfaction and extinguishment of Smith's indebtedness.

But upon its face it is no such instrument. It does not appear to have been made by or in behalf of the plaintiff, in any respect. There is nothing, either in the body of the instrument or the signature to it, to indicate that the plaintiff had any interest in it, or relation to it, other than than that of a mere promisee. On the contrary, upon its face and by its terms, it is the plain personal instrument and undertaking of the defendant, complete and perfect in all its parts, importing a valid legal obligation against him to the plaintiff.

The question then arises, whether parol evidence is admissible to vary and change this undertaking, not in some particulars, but in its entire legal character and scope. In short, to make it another and different undertaking, entirely, from what it appears to be upon its face, and by the clear, legal import of its terms. The defendant's counsel contends that such evidence is admissible in a case like this, where the defendant claims to have been acting as the agent merely of the plaintiff. But to maintain this he assumes that the action is between parties who are not parties to the undertaking, or that the defendant at least is neither party nor privy to it. Of course, if the defendant acted as agent only, and within the scope of his authority, his act was the act of the plaintiff, and as between him and Smith he was not a party; but the plaintiff was the party on the one side, and Smith on the other. On the contrary, if the defendant was acting for himself and for his own personal benefit and advantage, then both himself and the plaintiff are parties; the defendant as promissor and the plaintiff as promisee. For the rule now is, undoubtedly, that when such a promise as this apparently is, has been adopted by the creditor, it is regarded in law as a promise to him, as will appear by the two cases above

cited. So the case comes back to this precise question : whether an instrument which is apparently the personal obligation of the one by whom it is signed, may by parol, be shown to be the obligation of another, for whom the person signing was acting as agent.

There is a class of cases in which it has been held that this may be done. But the rule will be found to apply, I think, exclusively to cases in which it appears in the body of the instrument, or from the signature of the person by whom it is executed, that he was acting for another, and intended to bind such other, and not himself personally. Of this character are the cases of *Mechanics' Bank of Alexandria* v. *The Bank of Columbia,* (5 *Wheat.* 326 ;) *Brockway* v. *Allen,* (17 *Wend.* 40 ;) *Pentz* v. *Stanton,* (10 *id.* 275 ;) *Randall* v. *Van Vechten,* (19 *John.* 60 ;) *Becker* v. *Lamont,* (13 *How. Pr. R.* 23.) In such cases, where the party to whom the obligation is given understands the character in which the party giving it is acting, parol evidence may, it seems, be given to show that the maker, or obligor, was acting in the matter as agent merely.

But where there is nothing of that kind either in the body of the instrument, or attached to the signature, to indicate that it was intended to be any thing other than a personal obligation. such evidence is inadmissible. (*Lincoln* v. *Crandell,* 21 *Wend.* 101. *Newcomb* v. *Clark,* 1 *Denio,* 226. *Chappell* v. *Dann,* 21 *Barb.* 17. *Stackpole* v. *Arnold,* 11 *Mass. Rep.* 27.) This case clearly belongs to the latter class, and the referee was right in excluding the parol evidence from consideration, in deciding the case.

The principle is in no respect different, as I conceive, in this case, from what it would be were the action between the defendant and Smith, upon the same instrument. In either case the question would be whether in law it was the defendant's personal undertaking. The plaintiff having adopted the promise is a party to it, and the action is directly between the parties, as much as it would be between Smith

and the defendant.   There is no ambiguity in the instrument as a whole ; nor are there any terms employed in it which might not be properly employed as they are if the defendant intended to bind himself personally.   Parol evidence should never be allowed to create an ambiguity where none exists.   The undertaking is to cancel the indebtedness of Smith to White and to Bostwick, as well as to the plaintiffs, and this shows pretty conclusively that the term " to cancel" was used in the sense of to·pay and cancel ; because even if this was the undertaking of the plaintiff, the indebtedness to White and Bostwick could only be canceled by payment.

The case was properly disposed of by the referee, and the judgment must be affirmed.

[Monroe General Term, September 7, 1863.   *E. Darwin Smith, J. C. Smith* and *Johnson,* Justices.]