JAPHET M. THORP *et al.*, Appellants. *v.* ANGUS ROSS, Respondent.

AGREEMENT. IMPLIED PROMISE. PAYMENT OF MONEY FOR ANOTHER'S USE. REMEDY. PAROL EVIDENCE, ADMISSION OF TO VARY TERMS OF WRITTEN AGREEMENT, OR TO ESTABLISH A NEW AND SEPARATE PRIOR OR CONCURRENT AGREEMENT. JUDGMENT AFFIRMED, IF CORRECT INDEPENDENT OF SUCH TESTIMONY.

Where full and complete performance of a contract, by parties ready and willing to perform according to agreement, is frustrated by the neglect or refusal of the other party to the contract to remove certain obstacles to complete performance, which it was his duty to remove, — such neglect or refusal constitutes a perfect excuse for non-performance, and the parties so performing to the extent of their ability can recover the full value of their contract.

They cannot themselves incur the expense of removing such obstacles, and then recover from the other party the amount so expended, as that would be to impose upon him an obligation which he never agreed to assume.

[The last proposition embraces the real point determined in the case, as the action was brought to recover moneys expended in the manner and for the purpose indicated. The first proposition, however true and distinctly affirmed, is merely a *dictum*, as no such case was before the court; the plaintiffs were not seeking full payment on a contract unfulfilled by reason of the neglect of the defendant; but additional payment for expenses incurred by them in fulfilling the contract, which they allege it was his duty to incur, or to assume. The first proposition, therefore, only serves to point out to the plaintiffs a remedy of which it was then too late to avail themselves.]

The principle of the second and essential proposition may be otherwise stated, thus:

The payment by the plaintiffs of any sum, which, by the terms of their contract, they were not bound to pay, in order to fully execute their agreement with the defendant, and which he has refused to pay, is voluntary upon their part, and without authority from the party sought to be charged, and imposes upon him no legal obligation to refund.

A request to pay, or a promise to refund, cannot be *implied* from a *refusal to pay*.

It will be observed, that both prevailing and dissenting opinions concur in this, that error was committed by the referee in the admission of evidence to prove a different contract from that entered into in writing, and which was put in proof upon the trial. DWIGHT, J., dissenting, finds, that the judgment was controlled or influenced by this evidence, and, on that ground, would reverse the judgment and grant a new trial; WOODRUFF, J., while opposing the grounds upon which the decision of the referee

and of the Supreme Court was placed, reaches the same conclusion —adverse to a recovery—upon other grounds brought to view in the case, which see, above.

*A. C. Morris*, for the appellants.

The plaintiffs are masons, and made a contract, in writing, with the defendant to do the mason work upon three buildings which the defendant was erecting upon lots Nos. 42 and 44 Gouverneur street, in the city of New York.

This contract, among other things, required the plaintiffs to lay drain pipes upon the two lots and connect them with the sewer in the street.

By a city ordinance, no connection can be made with a sewer except by a plumber specially licensed for that purpose, who must first obtain a permit from the Croton Water Board, and pay a fee of $10 for each house connected. The custom is for the plumber to pay the fee when he applies for the license.

There were, upon the two lots connected, five houses.

The plaintiffs employed a licensed plumber to make the connection, who paid the Croton Water Board fees, amounting to $50, which was afterward repaid by the plaintiffs to the plumber.

The defendant refused to repay this to the plaintiffs, and they brought suit.

Upon the trial before the referee the plaintiffs proved these facts and rested.

The defendant's counsel then called Angus Ross, the defendant, who, under objection and exception of the plaintiffs' counsel, was allowed to testify to a conversation between himself and one of the plaintiffs the day before the contract was signed, in which conversation, as he testified, the terms of the contract were discussed, and the plaintiffs agreed to pay the Croton Water Board fee for connecting with the sewer.

He was followed by William H. Hanlon, who, under the same objection and exception, testified to the same fact.

After this testimony was taken, the plaintiffs' counsel

moved to strike it out as inconsistent with the written contract. The motion was denied, and the plaintiffs' counsel excepted.

The referee, upon the evidence of these two witnesses, contradicted by the testimony of the plaintiffs, found in favor of the defendant, holding that there was a double contract, one, in writing, for the work, and the other, by parol, to pay the Croton Water Board fee.

The plaintiffs appealed to the General Term, which affirmed the judgment of the referee.

I. The law will imply a promise on the part of the defendant to repay to the plaintiffs the Croton Water Board fee, which they necessarily paid to enable them to complete the work called for by their contract.

The plaintiffs did what was shown to be customary and indispensable: they employed a licensed plumber to make the connection with the sewer.

The authority to the plumber to pay the fees was not expressed, but involved in the employment.

The same as the law would imply a promise on the part of the plaintiffs to repay the fee to the plumber, it will imply a promise on the part of the defendant to repay it to the plaintiffs.

II. The evidence of the conversation which took place the day before the signing of the written contract should have been excluded, under the well settled rule which excludes evidence of all conversation and negotiations preliminary to the execution of a written agreement for the purpose of varying or adding to the agreement. (2 Phil. on Ev. 666, Isaac Edwards' ed. *et passim;* *Boyle* v. *Agawam Canal Company,* 22 Pick. 381; *Rich* v. *Jackson,* 4 Brown Ch. 515, and the case of *Jackson* v. *Rich,* in the Com. Pleas there referred to; *Brigham* v. *Rogers,* 17 Mass. 571.)

The testimony of the defendant and his witness Hanlon, is not of a distinct and separate agreement in relation to the Croton Water Board fee (as such it would be wholly without consideration); on the contrary, the testimony shows that the question of the payment of this fee was discussed as part of

the contract in reference to the mason work, the day before the written contract was signed.

It is to be gathered from this testimony (which shows that the contract was signed the next day without further negotiation), that, at the time of the conversation, the work to be done had been specified, and the sum of $4,700 proposed by the plaintiffs as its price, and that the defendant required that the plaintiffs, for this $4,700, should, in addition to doing the work specified, pay the Croton Water Board fee. If the plaintiffs assented to the payment of this fee, they virtually consented to receive for their work $4,650, instead of $4,700.

It would be impossible to sustain the agreement to pay the Croton Water Board fee, except as part of the agreement to do the mason work, if for no other reason, because it would, standing by itself, be wholly without consideration, and this the defendant would have found if the plaintiffs had, when they had reached this point of the work, stopped because of the non-payment of the fee by the defendant.

III. Of course there can be no pretense that the defendant, either by his pleading or his testimony, has presented a case for reforming the written agreement. (*Lyman* v. *Mutual Insurance Company*, 17 Johns. 373; 2 Johns. Ch. 274, 585, *et passim.*)

IV. With all respect to the learned judge who delivered the opinion of the court below, the case of *Rich* v. *Jackson*, above cited, is not only in point, but it was, in its origin, on all fours with the present case.

The suit was first brought in the Common Pleas by Jackson against Rich, and was (as in the present case) upon an implied assumpsit of the defendant to repay to the plaintiff £16 8s., which, as the tenant of the defendant, he had been obliged to pay for taxes, in defense of his possession.

No express agreement was attempted to be shown, the plaintiff relying simply upon his right as tenant to defend his possession.

As in the present case, the defendant offered witnesses to show, that, in a preliminary negotiation for the lease under

which the plaintiff held, it was agreed that the plaintiff should pay all taxes.

The plaintiff produced the lease, which was silent about the taxes, and the court excluded the testimony as varying the written contract.

The case of *Rich* v. *Jackson* (with the title reversed), was a suit in chancery, brought by the landlord, upon his defeat in the Common Pleas, to reform the lease, by inserting in it the agreement on the part of the tenant to pay the taxes. There was no pretense of fraud or mistake, and the plaintiffs failed in chancery, where it is an established principle that *equitas sequitur legum*, for the same reason, to wit, that the written agreement merged all preliminary conversations and negotiations.

It will be noticed that in this case the court did not fall into the error of the learned referee in the court below, who says: "The law will not imply a promise on the part of the defendant to pay for that which he refused to pay for, and which the plaintiffs expressly agreed to pay for." The learned referee seems unconscious that he is here begging the whole question. The plaintiffs deny that they agreed to pay the fee, and refer to the written agreement as conclusive that they did not.

The learned judge, while adopting the ingenious notion of the referee, of two contracts, admits that the agreement to pay the Croton Water Board fee does diminish the plaintiffs' compensation under their contract; but says that this is only incidentally. When the plaintiffs took the precaution to put their agreement in writing, they supposed that they were securing to themselves the compensation of $4,700 for their work, and whether this compensation is to be reduced $50, directly or incidentally, they cannot help feeling aggrieved.

The learned judge puts the following case: "A builder enters into a written agreement with me to build a house, specifying all the particulars. The house is finished, and I pay him the agreed compensation. He, afterward, demands payment of his lawyer's fee. I refuse, on the ground that it was agreed by the parties, before the written agreement was

signed, that he was to pay all legal expenses. Is not this, he asks, a distinct agreement from the written one?"

The case is not clearly put. I will answer the question with the following cases:

1. A builder, about contracting with A to build him a house, proposes to employ a lawyer to draw the papers, and upon A.'s objecting to the expense, promises to pay the whole of it himself. So far from this being a distinct agreement from the building contract, it is no agreement at all. In a suit brought by the builder against A for his share of the expense, A would rely, not upon the builder's agreement to pay the whole, but upon the absence of any agreement upon his (A's part) to pay any part.

2. The parties go to a lawyer to have the agreement put in writing, with the understanding that each shall pay his share of the expense. The terms of the building contract are discussed. A gives a specification of the work to be done, and the builder names the price, $4,700. A says, "You pay the lawyer's expenses, and I agree." The builder assents and settles the lawyer's bill on the spot, and then the contract is put in writing. Here, again, we find no agreement about lawyer's fees.

Take the case last supposed, up to the point of A's proposing that the builder pay the lawyer's fee. Instead of paying, the builder replies, "Well, I suppose I will have to stand it." Here we have an executory agreement on the part of the builder to release A from an obligation to pay his share of the lawyer's charges. By what consideration is this agreement supported? Clearly by the consideration of the building contract of which it forms part. If omitted from the writing it would be impossible to enforce it, and A would have no defense to a suit brought by the builder for his, A's, share of the expense.

V. The extraordinary astuteness by which the learned referee escapes from a well settled and most beneficial rule of law finds no excuse in any particular merit of the defendant's case.

1. The reason why the $50 fee was not demanded from

the defendant at the time he paid the price in full under the contract, is perfectly apparent: the plumber's bill had not then been sent in to the plaintiffs.

2. The plaintiffs deny that they ever agreed to pay this fee; and the testimony of the defendant and his witness Hanlon, in regard to the alleged conversation, is vague and unsatisfactory, the witnesses contradicting each other in almost every detail.

*A. B. Millard,* for the respondent.

I. The appellants' claim is not founded upon the written contract, but upon the respondent's obligation to pay money paid by the appellants for the respondent's benefit at his request. The appellants took this position on the trial.

II. The evidence to which the appellants excepted was not offered to add to or vary the written agreement, and did not have that effect. The sole purpose of that evidence was to show a parol contract in regard to tapping the sewer. This is the ground assumed by the referee in his finding.

III. The plaintiffs failed to prove a request by the defendant that the plaintiffs should pay for tapping the sewer.

Assuming the evidence objected to had been rejected, the plaintiffs could not recover. (See *Renn. Glass Factory* v. *Reed*, 5 Cow. 588; *Murray* v. *Bogart*, 14 Johns. 318; *Menderbank* v. *Hopkins*, 8 id. 249; *Spencer* v. *Saratoga & Washington R. R. Company*, 12 Barb. 382; *Harper* v. *Leal*, 10 How. Pr. 276.)

Woodruff, J. The judgment herein cannot, I think, be sustained upon the grounds upon which the decision was placed by the referee, or by the Supreme Court, to wit, that the parol agreement of the plaintiffs to pay the license fee for tapping the sewer, made cotemporaneously with the execution of the written agreement, was binding upon them though not included in the writing, because it was a separate or collateral undertaking.

The defendant agreed, in writing, to pay to the plaintiffs $4,700, and no more.

The plaintiffs, on the other hand, agreed, by the writing, that for that $4,700 they would do and perform certain work, labor, etc., mentioned therein.

Now to permit the defendant to show, that it was at the time of the making of the agreement verbally stipulated that for that same $4,700 the plaintiffs should do or pay any thing which the writing did not expressly nor impliedly embrace and bind them to do or pay, is to allow the written contract to be altered by parol. Just as much so as it would be altered by permitting the plaintiffs to prove that, besides the payment of the $4,700, the defendant was to do or pay something else as a further compensation for what the plaintiffs, by the writing, agreed on their part to do.

Whatever the plaintiffs were bound to do, was to be paid for by the $4,700. Whatever the defendant was bound to pay was to be recompensed by just what the plaintiffs agreed to do. And to each of them the writing is the sole and exclusive evidence. It was not, therefore, competent to show by parol, that for this same $4,700 the plaintiffs were also to do something which the written agreement did not bind them to do.

It is insisted that the fair interpretation of the writing bound the plaintiffs to perform the work of tapping the sewer, and therefore, by implication, bound them to pay the license fee, without the prepayment of which they could not perform the work.

I express no opinion upon the construction of the contract in that respect, or on the supposed implication.

My conclusion is, that the judgment should be affirmed upon this very brief statement of the right and duty of the parties, viz.:

The plaintiffs were bound by the true meaning and effect of the written agreement, to procure the license to tap the sewer, and pay therefor, or they were not so bound.

If they were bound by the writing to procure the license and pay therefor, then of course they cannot recover it from the defendant.

If they were not so bound, then they have paid the money without the defendant's request, and without any authority to

pay money on his account; it was a voluntary payment, and imposed on him no legal obligation to refund.

It is asked, were the plaintiffs (if not themselves bound to pay the license fee), bound to suffer the performance of the work to be defeated by the defendant's non-payment of the license fee, and so lose the profits of their contract?

By no means. Doing on their own part all that they were bound by their contract to do, or all that they could lawfully do, if the defendant failed to remove any obstacle to the complete performance which it was his duty to remove, his neglect or refusal would be to them a perfect excuse, and they could recover all the value of their contract. ·

If a builder contracts with another to build for him a house upon a specified lot of land, but finds when he begins to build, that another is in possession, and is, in fact, the owner, the builder cannot purchase the lot for the contracting party and recover from him the price paid, on the idea that without such purchase he could not perform his contract and realize the profits thereof.

Or if he finds the lot in the possession of a tenant under an unexpired lease, he cannot purchase the unexpired term and charge the purchase money to the contracting owner of the fee.

And so, generally, where one has contracted to perform work, etc., of the description in question, if he find obstacles in the way which cannot be removed without the payment of money, and it is the duty of the party contracted with to remove such obstacles, and so enable him to perform his contract, he may require such party to remove them, and if such party refuse he will be excused *pro tanto* from the performance of his contract, and may recover his full profits, but he cannot volunteer to pay the money himself, and then compel the others to repay that which he had refused to pay. It would be strange if a request that the plaintiff pay money could be implied from the refusal of the defendant to pay it.

Upon this ground the judgment must be affirmed.

DWIGHT, J. (dissenting). Action for money paid by the plaintiffs for the use of the defendant. The plaintiffs, who

were masons, entered into a written contract with the defendant to erect and finish certain brick houses on lots belonging to the defendant in the city of New York. The plaintiffs were to furnish all the materials and do all the labor for a specified price, in gross, viz., the sum of $4,700. The specifications required the construction of five drains to connect as many vaults, on the premises, with the sewer in the street. An ordinance of the city required that a fee of ten dollars for each drain should be paid to the Croton Aqueduct Board for the privilege of tapping the sewer. The plaintiffs hired a licensed plumber to tap the sewer for the five drains. The plumber paid the fees, amounting to fifty dollars, the plaintiffs reimbursed him the amount and brought this action to recover the same from the defendant. On the trial, before a referee, the plaintiffs proved the written contract, the ordinance of the city, and the payment of the fees, and rested. The defendant then offered evidence of a conversation, between one of the plaintiffs and himself, relative to the payment of the fees in question, which occurred before the execution of the contract in proof. The plaintiffs objected to the evidence as incompetent, because it tended to add to or vary the written contract; the objection was overruled and the plaintiffs excepted. The evidence thus admitted was to the effect, that, as the negotiations between the parties were closing, the architect, who was to draw the contract and specifications, being present, one of the plaintiffs said to the defendant, "Now, Mr. Ross, you ought to pay for the tapping of the sewers." The defendant answered, "No, I will not pay for anything." The architect then said to the plaintiff present, "What do you say, Mr. Thorp? I want this thing fairly understood." Thorp answered, "Well, I suppose I will have to stand it," and the architect replied, "Well I will draw up the contract." The contract, as drawn and executed, made no reference to the payment of the fees in question.

The referee found the facts as above, and reported in favor of the defendant. Judgment, accordingly, was affirmed at the General Term, and the plaintiffs appeal to this court.

It is clear that the evidence of the parol agreement, preliminary to the written contract, was improperly admitted. The rule is elementary, that the written agreement must be taken to be the repository and evidence of the final intention and understanding of the parties. No matter what the previous negotiations or agreements may have been, the parties will be held to have finally agreed and decided upon the covenants and conditions expressed in the written agreement. By the contract in this case, the plaintiffs agreed to do certain things for a stipulated price. The specifications, attached, stated in detail what it was they agreed to do. They were to furnish all the materials, and do all the work required, to erect and finish the buildings according to the specifications. The building of the drains and the work of connecting them with the sewer, was embraced in the specifications. The effect of the parol agreement, admitted in evidence, was to charge the plaintiffs with the additional obligation to pay the Croton Aqueduct Board for the privilege of tapping the sewer. This payment was not called for by the terms of the written contract, neither was it within its legal construction. It was no part of the work of erecting and finishing the buildings, nor of constructing the drains, nor of connecting them with the sewer. It was not the payment of a fee for license to do the work. The plaintiffs employed for that purpose a plumber already licensed to do all branches of work in his line. The fees in question, which were required by law to be paid before the connection with the sewer would be permitted to be made, were evidently imposed for the defendant's privilege of draining his premises into and through the public sewer. The payment of such a charge was wholly without and beyond the scope of the plaintiffs' undertaking in their written contract, and to require it of them would be to impose upon them an obligation not expressed in nor to be implied from that writing. How then can it be said that the parol agreement, admitted in evidence, did not vary the written agreements? The view urged by the respondent here and taken in the court below is, that this was a distinct and independent agreement, relating to matter not embraced

in the written contract, and therefore not in conflict there-with. But it is not so. Though it do not contradict the written agreement, viz., by negativing any thing which is there affirmed, it clearly does add to the written agreement, viz., by affirming what is not there affirmed. The question is, what have the plaintiffs undertaken to do in the matter of the erection and finishing of these houses? To put the answer to that question beyond all doubt or cavil, they have entered into a written contract with specifications, and the rule is inflexible, that, except for the purpose of reforming that contract on the ground of fraud or mistake, no court will go behind the contract itself to inquire what may have been the previous negotiations, understandings or even agreements between the parties. The referee, therefore, erred in admitting the evidence objected to by the plaintiffs, and for that reason the judgment should be reversed and a new trial granted.

HUNT, Ch. J., and GROVER, MASON, CLERKE and BACON, JJ., concurred with WOODRUFF, J.

Judgment affirmed with costs.