PATRICK FLYNN AND MAURICE B. FLYNN, AS ADMIN-
ISTRATORS, ETC., OF THE ESTATE OF JOHN H. FLYNN,
DECEASED, RESPONDENTS, *v.* THE EQUITABLE LIFE ASSUR-
ANCE SOCIETY OF THE UNITED STATES, APPELLANT.

*Life insurance — medical examiner of company — agent of — false statement made*
*through his advice — effect of on validity of policy.*

Where the application for insurance contained the usual interrogatories, and specially referred to diseases which the assured had had, and also required the name of his usual medical attendant to be given, and he named as the latter a physician who had attended him during the past three years, who was also the medical examiner on the part of the company in this case, who interrogated the assured as to all the matters required to be answered and stated in the application; explained in regard to them, and himself filled the blanks by inserting therein the answers; and it appeared that the assured gave his answers truthfully, so far as it was deemed important by the medical examiner, and that whatever of mistake, omission or fraud occurred in the answers and statement, were through the action of the doctor, and from his explanation and advice:
*Held*, that although the answers and statement were untrue, yet, as the medical examiner, under whose advice they were made, was the agent of the company, they were bound by his acts and could not set up the untruthfulness of the answers and statement as a defense. That if the medical examiner had been guilty of fraud, yet there being no evidence of collusion on the part of the assured, the company were liable.

APPEAL by the defendant from a judgment entered on the verdict of a jury.

The action was brought on a policy of insurance, dated April 25, 1871, issued by the defendant to the plaintiff's intestate, and upon his life, in the sum of $5,000. The assured died intestate April 9, 1873; and the plaintiffs are his personal representatives.

The application for insurance, signed by the party, contained the

usual interrogatories, and among them the following : Whether the applicant ever had " disease of the kidneys, disease of the bladder,   *   *   *   diseases of the brain and nervous system,   *   *   * any serious illness or local disease." The answer was, " whooping cough, measles ; no effects from them." The application also contained a direction for him to give the name and residence of his usual medical attendant ; and to state " on what occasions and for what diseases " he had " required his attendance and advice." His answer was : " Ransom H. Vedder, Chatham Centre ; nothing but debility and slight bilious difficulty." The application also contained the further interrogatory, whether he had " consulted any other medical man ; if so, for what, and when ? " The answer was " No." It was further made a condition of the insurance, that any untrue or fraudulent answers, or any suppression of facts in regard to the health of the party, should render the policy null and void. It appeared on the trial that, in 1866 and 1867, the assured had some serious disease of the bladder or urinary organs, with, perhaps, cistitis, and had been operated upon therefor in the hospital in New York ; and that he had also consulted doctors not named by him in his application ; also that, in 1869, he had given indications of brain difficulty or disease, which, however, it would seem, was of short duration. To meet and answer these facts, it was proved, on the part of the plaintiffs, that Doctor Vedder was the defendant's medical examiner, and examined the assured in this case ; that he interrogated the latter as to all the matters required to be answered and stated in the application ; explained in regard to them, and himself filled the blanks by inserting therein the answers ; and, further, that the doctor had been for ten years previously his attending physician. It also appeared that, on the examination, the assured gave his answers and statements to Doctor Vedder truthfully and fully, in so far as it was deemed important by the doctor ; and that whatever of mistake, omission or falsehood occurred in answers and statements, appearing in the application, arose through the action of the doctor, and from his explanations and advice.

The case was submitted to the jury on the facts, with the ruling that if they should find from the evidence, that the assured made a substantial statement to Doctor Vedder of the difficulties under

which he labored, and which had been proved in the case on the part of the defense, then the company could not set up the untruthfulness of the answers entered by him, as a defense; that if the company, with a knowledge of the truth, advised (through its agent), the insured that the answers written would be the truth, and the right answers to be given to those questions, then it could not take advantage of the untruthfulness in the answer. The jury found for the plaintiff, and judgment was entered on the verdict. The defendant moved for a new trial upon the minutes of the court. The motion was denied, but it does not appear from the case before the court that an appeal was taken from the order denying such motion. The appeal is from the judgment.

*Alexander & Green* and *Ashbel Green*, for the defendant.

*Robert Payne*, for the plaintiffs.

BOOKES, J.:

According to the terms of the contract the company had a right to insist in this case on truthful answers and statements, as to all matters to which the attention of the assured was specifically called in the application for insurance, and as to which he was required to speak. Nor would it make any difference whether or not they were material to the risk, or had any connection with the cause of death. The parties agreed that any untrue or fraudulent answers, or any suppression of facts in regard to the health of the applicant should render the policy null and void. Thus the statements became warranties, and the company might insist that they should be absolutely true. (53 N. Y., 603; 30 id., 136, 163; 49 id., 211; 35 Conn., 225; 18 N. Y., 376; 55 id., 240, 244; 59 id., 557.) Nor were the statements in this case relieved from the strict rule applicable to warranties by any explanation or declaration contained in the application, as in the last case cited. So it must be conceded that if the rule applicable to warranties is to have application here, the judgment is erroneous, for it cannot be disputed, and is not, that several of the statements contained in the application were untrue. But it is insisted that the company is estopped from insisting upon the breach of the agreement and warranties as

to those false statements by reason of explanations, advice and assurances given by its agent, the examining physician, who, as is alleged, was correctly and fully informed of the truth of the case, and who himself inserted the answers and statements, declaring to the applicant that they were the right statements to be made by him under the facts as they existed in his case.

That Doctor Vedder was selected by the company to make the medical examination, stands undisputed. The papers as well as the oral proof establishes this fact, and it is also proved that he was requested by Corry, the accredited agent of the company, to take the application. If this be so, and I think this must be assumed from the evidence and the finding of the jury thereon, and especially as the transaction consummated through Doctor Vedder was adopted by the company, then Doctor Vedder held the relation of agent for the latter, and the case must be examined in that view as a matter of fact. This conclusion, if sound, brings the case within the decisions holding that the insurer will be estopped from showing a breach of warranty by proof of errors in the statements inserted in the application under the advice and by the direction of the agent having knowledge of the facts as they really existed. It was held in *Rowley* v. *Emp. Ins. Co.* (36 N. Y., 550; also reported in 4 Ct. App. Dec., 131, with opinion by DAVIES, J.; also 4 Keyes, 557), that notice to the agent of an insurance company who was authorized to take applications for insurance was notice to the company, and that such agent, in filling up the blank application for insurance, acts as the agent of the company, rather than of the applicant; and further, that misstatements made therein by him not induced by the instructions of the applicant, would not avoid the policy. So in *Plumb* v. *The C. Co. Mut Ins. Co.* (18 N. Y., 392), Judge PRATT remarked that he could not discover why the doctrine of estoppel would not apply to a case like this, where the party, through whose acts and representations the other party was induced to enter into the contract, claimed the right to show that the facts were different from what he represented them to be, for the purpose of showing a breach of the warranty, and thus avoiding what would otherwise be a binding contract. *Rowley's Case* and *Plumb's Case* above cited were commented on by Judge GROVER, in *Owens* v. *Holland Purchase Ins. Co.* (56 N. Y., 565, on pages

570, 571), and the soundness of the decision in the former is questioned by that learned judge; but it is remarked at the conclusion, that none of the other judges concurred in that portion of Judge GROVER's opinion questioning *Rowley* v. *The Empire Ins. Co.* Thus it may be assumed that this case still stands as settled law in this State. It may be remarked also that it is in perfect accord with the decisions in several of the other States. Now the rule laid down by the court for the guidance of the jury, in the case at bar, was the correct one, according to those decisions. It appeared that Doctor Vedder was instructed to obtain the application. He was made the defendant's medical examiner in the case. He had known the applicant for many years, and had been his attending physician. He made the inquiries propounded in the application, and received the answers. They were given him by the applicant, as the jury have found, truly and fully. He explained and advised the answers, declared them to be the proper answers and statements to be given under the facts of the applicant's case. It was correct for the court to charge the jury, under the facts proved, that if they should find from the evidence that the assured made a substantial statement to Doctor Vedder of the difficulties under which he labored, and which had been proved before them on the part of the defense, then the company could not set up the untruthfulness of the answers entered by him in the application as a defense; that if the company with a knowledge of the truth, advised the insured that the answers as written in the application would be the truth and the right answers to be given, then it could not take advantage of their untruthfulness. Such instruction was demanded by common honesty and fairness. It is suggested that here was a palpable fraud on the part of Doctor Vedder, and we are cited to the case of *The Nat. Life Ins.Co.* v. *Minch* (53 N. Y., 144), as an authority that the company were not bound by his acts. But that was a case of collusive fraud between the examining physician and the applicant, to cheat the company. So it was there held that when there was collusion by one party with the agent to cheat the principal, the latter was not responsible for the acts or knowledge of the agent. The case at bar is not one of collusion with the agent. It is put on the assumption that the assured acted honestly, and made no false statement or suppression of fact in his case. In

conclusion we are of the opinion that the record discloses no error, and that the judgment should be affirmed with costs.

LEARNED, P. J., and BOARDMAN, J., concur.

Judgment affirmed with costs.