## THE MAYOR &c. OF THE CITY OF NEW YORK *vs.* THE BROOKLYN FIRE INSURANCE COMPANY.

A lease, executed by the mayor &c. of New York to R. and others was upon the condition that the lessees should erect on the demised premises such a building as was described in a certain petition and resolution ; and at the expiration of the term quit and surrender the premises in as good state and condition as reasonable use and wear thereof would permit.    The rent reserved was nominal only.    *Held* that the future ownership by the lessors, of the building to be erected by the lessees, was in the contemplation of the parties at the time the lease was executed ; and that at the expiration of the term the lessors became the owners of the superstructure which had been erected in pursuance of the conditions of the lease, and had an insurable interest therein.

*Held, also*, that the lessors having been in possession of the building erected by the lessees, under a claim of ownership, at the time of procuring an insurance by them upon the same, the insurers could not be allowed, in an action on the policy, to dispute the lessors' interest in the building ; even if the title was acquired by an act constituting a trespass as against the lessees, or their receiver.

Verbal statements, made by the agent who effects an insurance for the owner of the property, in respect to the future occupation of the building, are not admissible in evidence, in an action upon the policy, inasmuch as such evidence would tend to vary the operation and effect of the language contained in the policy.

If there is any warranty as to the future use or occupation of the property insured, it must be contained in the policy, or be reduced to writing in proper form, before it can be admitted to affect the construction or obligation of the policy.

Where the property described in a policy, and the purposes to which it is dedicated, sufficiently indicate the character and nature of the articles to be kept there, and the business to be transacted, and the nature and extent of the risk must have been known to the insurers to embrace articles and pursuits specified as hazardous, extra-hazardous and special hazards, the carrying on of a business, in the building, denominated hazardous or extra-hazardous or specified in the memorandum of special rates, without permission of the insurers, will not vitiate the policy.

ON the 23d June, 1858, the defendants issued a policy for $5000 to the plaintiffs on the Crystal Palace Building, " together with the furniture and fixtures now in said building lately owned by the association for the exhibition of the industry of all nations, and since vested in John H. White,

as receiver, and also such other property lately vested in said White's hands, as receiver, belonging to exhibitors, and lately in said White's custody and keeping now remaining in said building." The insurance was " for account of whom it may concern," and was against loss or damage by fire, and for one year. On the 15th of December, 1854, John H. White was appointed by the supreme court " receiver of the property and effects" of the association, under the statute in regard to voluntary dissolution of corporations, and with authority to sell the property and effects at public or private sale. From the 15th of December, 1854, to the 31st of May, 1858, White, as receiver, was in possession of the building, and such of the furniture, fixtures and other property as the respective owners had not called for. During that time he frequently let the building for purposes of different kinds, and occasionally delivered to the respective owners different articles of the property which had come into his hands. The land on which the building had been erected had been occupied by the association under a lease from the plaintiffs, which expired on the 3d January, 1857. The plaintiffs allowed White, as receiver, to hold over until the 31st of May, 1858, when they took possession by force, without even the form of law, and turned White out; such possession and eviction, including as well furniture, fixtures and other property, as the building. Two days after the insurance was effected in this case, and on the 25th June, 1858, the plaintiffs let to the American Institute, for one year from the 1st June, 1858, the land on which the palace stood. And in the lease reserved permission to retain there all the goods and chattels then in the building, and the American Institute covenanted that they should be kept safe and in good condition. The American Institute, immediately on receiving the lease, took possession of all the property as White had had it; and on the 15th September, 1858, opened their annual fair in the building. On the 5th day of October ensuing the building and its contents were destroyed by fire. The plaintiffs claimed only for a loss on

the building. It was proved on the trial that the land was unoccupied when the lease was given by the plaintiffs on the 23d March, 1852, for the purpose of an industrial exhibition for five years, and that the building covered by the insurance was erected by and was the property of the " Association for the exhibition of the industry of all nations," who were assignees of the plaintiffs' lessee. It was also proved, that the " furniture and fixtures in the building " belonged to said association, and " the other property " in the building, at the time of the insurance, belonged to various exhibitors. It was also proved, that the American Institute, for the purposes of its exhibition, had introduced into the insured premises many articles, which in the conditions annexed to the policy were denominated hazardous, extra-hazardous, and special hazards, such as glass-blowing, restaurants for sale of liquors and cigars, with kitchen for cooking, acids, forge for repairing, burning fluid, gas manufacturing, steam engines, a panorama, &c., &c.; all of which articles were not in the building when the policy was executed, but were in it when the fire occurred, and had been for about a month. It was also proved that during the previous year, while the premises were in the possession of White, as receiver, they had been let to the American Institute, who had held in it their annual fair for 1857, but their lease had expired, and he had refused to let it to them for 1858; and that thereupon the city had forcibly dispossessed him, and that no permission had been granted to the American Institute to hold there its annual fair for 1858, until after this insurance had been effected; and that no consent thereto had been asked for or obtained from the insurers. The defendants offered to prove representations made by the agent of the plaintiffs when he applied for and obtained this insurance, but the court excluded the evidence. The defendants made several requests to charge the jury, with which the court refused to comply, and to which refusals the defendants excepted. The justice, presiding at the cir-

cuit, directed the jury to find a verdict for the plaintiffs, and they did so for the amount of the insurance and interest.

Exceptions were taken on the trial, which were ordered to be heard in the first instance at the general term.

*D. Lord* and *T. H. Rodman*, for the plaintiff.

*J. W. Edmonds* and *D. E. Wheeler*, for the defendants.

*By the Court,* LEONARD, J.   The lease from the mayor &c. of New York to Edward Riddle and his associates, was upon the condition that he and his associates should erect on the demised premises such a building as was described in a certain petition and resolution, and at the expiration of the term, quit and surrender the premises in as good state and condition as reasonable use and wear thereof would permit. The rent reserved was nominal only.   The terms of this covenant operated as a grant of the superstructure so to be erected, to take effect at the expiration of the term.   The building was to be the consideration, in part, for the lease. Without securing the construction and ownership of the edifice at the end of the term there was no apparent object to be attained by the covenant of the lessee to build.   We think the future ownership of the building was in the contemplation of the parties at the time of its execution, and that, at the expiration of the term the plaintiffs became the owners of the superstructure erected in pursuance of the condition of the lease, a compliance with which alone rendered it operative in favor of the grantee.

If the building were to be considered as the property of the lessee at the termination of the lease, the plaintiffs were liable to be charged for its value as wrongdoers, at the suit of the receiver, after they had forcibly ejected him and taken possession thereof.   The plaintiffs were then in possession under a claim of the ownership of the building, and it is a question which the defendants are not called upon to vindi-

The Mayor &c. of New York *v.* Brooklyn Fire Ins. Co.

cate, how the plaintiffs acquired the title, or whether they were liable to be dispossessed or to be charged as wrongdoers. The defendants cannot be allowed to dispute the plaintiffs' interest in the building, even if the title was acquired by an act which constitutes a trespass as against the lessee or the receiver. The receiver can maintain no action to recover the actual possession of the building since its destruction, and a recovery against the plaintiffs for its value, by way of damages, would vest the ownership in them, even if they acquired no title in it by the conditions of the lease, and the expiration of the term. The questions sought to be raised by the defendants based on the manner by which the plaintiffs acquired title are not open to the defendants, and the authorities cited on this subject are not applicable here. The cases are between landlord and tenant and others standing in a representative relation, which is not the situation of the defendants here.

It may be observed that no action has been prosecuted by the receiver to recover the possession of the building, so far as is shown by the case.

There is no doubt that the plaintiffs had an insurable interest in the building as against these defendants. The exceptions taken in respect to the interest of the plaintiffs in the subject insured, are therefore not well taken.

It is insisted that the building was occupied and used for certain purposes, and contained goods, wares and merchandise, within the schedules attached to the policy, specifying forbidden occupations and articles, denominated hazardous, extra-hazardous, and special hazards, and that the body of the policy contains no language that permits such occupations to be carried on, or such articles to be kept. The policy describes the building as the Crystal Palace; and mentions that it contains the furniture and fixtures lately owned by the association for the exhibition of the industry of all nations, and also the property of exhibitors remaining in the building. The premises had been used and occupied as a place of exhibi-

tion for " The World's Fair," as it was called, and also for the
annual fair of the American Institute, for several years, prior
to the execution of the policy of insurance, and the nature of
the prior occupation was well known to the defendants.
There was no " fair" on exhibition at that time, but the an-
nual "fair" of the American Institute was opened at the
building in September following, and numerous articles and
manufactures, and also a restaurant, within the restrictions
mentioned in the schedules attached to the policy were kept and
carried on there until the fire which destroyed the building. .

There were numerous articles contained in these schedules
which were in the building at the time the policy was, exe-
cuted, and had been on exhibition at that place, and belonged
to exhibitors, or to the receiver of the association for the ex-
hibition of the industry of all nations.

The policy describes the building and the general nature
of its contents, and the purpose of its occupation.  Nothing
can be found leading to the inference that the building was
not to be occupied and used as it had been before, and that
such articles as had been on exhibition, and such manufac-
tures and occupations as had been carried on there were not
to be again used, exhibited and carried on.

The property described in the policy, and the purposes to
which the building was dedicated, sufficiently indicate the
character and nature of the articles to be kept there and the
business to be transacted.  The nature and extent of the risk
must have been known to the insurers to embrace articles
and pursuits within the schedules referred to, which were an-
nexed to the policy.

The refusal of the justice at the trial to give the instruc-
tions asked for in respect to the manner of the use of the
building or the nature of the articles kept therein, was cor-
rect, and the exceptions of the defendant's counsel to such
refusal were not well taken.

The defendants also offered to give evidence of the verbal
statements of the agent of the plaintiffs who effected the

insurance, in respect to the future occupation of the building, but it was excluded, and to this ruling the defendants excepted. Such evidence would tend to vary the operation and effect of the language contained in the policy. If there was any warranty as to the future use or occupation of the property it must be contained in the policy, or be reduced to writing in proper form, before it can be admitted to affect its construction or obligation. Such a statement is not, in legal sense, a representation of any fact. There was no fact in existence about which the statement proposed to be given in evidence was offered. The ruling of the justice on this question was correct.

The judgment was suspended at the trial by order of the justice, and the exceptions were directed to be heard at the general term in the first instance.

Judgment should now be entered for the plaintiffs on the verdict, with costs.

[NEW YORK GENERAL TERM, February 1, 1864. *Leonard, Sutherland* and *Clerke*, Justices.]