## N. Y. SUPERIOR COURT.

ESTHER D. POHALASKI, plaintiff and respondent, agt. THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, defendant and appellant.

The terms of a life policy of insurance issued by the defendant to the plaintiff, on the life of her husband, Jacob M. Pohalaski, contained a condition that if the said Jacob M. Pohalaski should pass beyond certain limits specifically described therein without the consent of the company given in writing the policy should be void.

Subsequently permission, in writing, was given to Mr. Pohalaski to proceed to Cuba, a place within the prohibition of the policy, by a permit, as follows: "Permission is hereby given to J. M. Pohalaski * * * to proceed to Cuba and return before April 1, 1871. He to take his own risk of death from epidemics." Mr. Pohalaski proceeded to Cuba and died in the city of Havana, of yellow fever, in the month of February, 1871.

The referee found from the testimony that although there occasionally occur in Havana, in the winter months, from time to time, a few sporadic cases of yellow fever, yet it rarely prevails or exists in Havana in the winter months as an epidemic, or in the form or condition, or to the extent of an epidemic, and did not so prevail at any time in the month of December, 1870, or in the months of January or February, 1871, when the said Jacob M. Pohalaski took the disease and died.

The referee found from the facts, as a conclusion of law, that the death of said Jacob M. Pohalaski occurred under circumstances bringing it within the risk assumed by the defendant in issuing the said policy.

*Held*, that the court on the trial properly excluded evidence offered by the defendant of conversations between Mr. Pohalaski and the president of the defendant, alleged to be had at the time the permit was given, showing that the word "epidemic" was used in the permit as including yellow fever and cholera as diseases, without any reference to their existing in an epidemic form or to epidemic extent at any particular time.

*Held*, also, that evidence offered by the defendant, intended to be shown by a well known physician on sanitary subjects, that yellow fever is properly classified in medical science and known as belonging to diseases

called epidemics, was properly excluded on the ground that the permit being reduced to writing, it must be taken to be the repository and evidence of the final intention and understanding of the parties.

*General Term, June,* 1873.

*Before* FREEDMAN, CURTIS *and* VAN VORST, *JJ.*

APPEAL from judgment entered upon the report of a referee in favor of the plaintiff.

HENRY E. DAVIES & JULIAN T. DAVIES, *for appellant.*
JOSEPH R. FLANDERS, *for respondent.*

*By the Court,* FREEDMAN, *J.*—This action is brought upon a life policy, and the questions presented by the appeal may be said to relate almost exclusively to the interpretation of the permit issued under the policy and the admissibility of parol evidence to vary its language.

The policy was issued to the plaintiff directly, and by its terms, in consideration of the sum of fifty dollars and sixty cents, duly paid by the plaintiff, and of the semi-annual payment of a like amount to be made by her during the continuance of the policy. The company insured the life of Jacob M. Pohalaski, plaintiff's husband, for the sole use of the plaintiff, in the amount of $5,000, for the term of his natural life. It was issued and accepted upon the express condition enumerated therein, that if the said Jacob M. Pohalaski should pass beyond certain limits specifically described therein without the consent of the company given in writing, it should be null and void. Subsequently permission in writing was given to Mr. Pohalaski to proceed to Cuba, a place within the prohibition of the policy, by the following permit: "Permission is hereby given to J. M. Pohalaski * * * to proceed to Cuba and return before April 1, 1871. He to take his own risk of death from epidemics."

Mr. Pohalaski proceeded to Cuba and died in the city of Havana in the month of February, 1871. As to the cause of his death, the referee, upon sufficient testimony, found as fol-

lows: That the disease of which the said Jacob M. Pohalaski so died was yellow fever; that though yellow fever in Havana and the island of Cuba is an endemic or an endemical or indigenous disease, and though there occasionally occur in Havana, in the winter months, from time to time, a few sporadic cases of that disease, yet it rarely prevails or exists in Havana in the winter months as an epidemic or in the form or condition or to the extent of an epidemic, and did not prevail or exist in Havana in the form or condition or to the extent of an epidemic, or as an epidemic, at any time in the month of December, 1870, or in the month of January or in the month of February, 1871, and was not an epidemic in Havana, and did not prevail or exist in Havana in the form or condition or to the extent of an epidemic when the said Jacob M. Pohalaski took the said disease in Havana, as aforesaid, or when he died in Havana of that disease, as aforesaid; that the said Jacob M. Pohalaski did not die of an epidemic or of a disease prevailing or existing at Havana epidemically, or in the form or condition or to the extent of an epidemic, either when he was seized with the disease with which he died or when he died.

Upon these facts the referee found, as a conclusion of law, that the death of said Jacob M. Pohalaski occurred under circumstances bringing it within the risk assumed by the defendant in issuing the said policy.

The defendant, upon the trial, claimed the right to show that when Mr. Pohalaski applied for the permit to visit the island of Cuba the issuance of it was objected to by the president of the defendant on the ground of the risk the defendant would run by reason of the prevalence of yellow fever in the island of Cuba at all seasons of the year, and that the permit was finally issued to the said Pohalaski upon the express condition and agreement that he would take his own risk of death from yellow fever; that the parties in their conversation with respect to the permit used the word "epidemics" as including yellow fever and cholera as diseases without any

reference to their existing in an epidemic form, or to epidemic extent at any particular time, and that the word was so used in the permit. The evidence, however, of the conversations between Mr. Pohalaski and Mr. Winston, showing their use and their intent in the use of the word "epidemics," was excluded, and to its exclusion the defendant duly excepted.

The defendant also offered to show by Dr. Elisha Harris, a well known physician and authority on sanitary subjects, that yellow fever is properly classified in medical science and known as belonging to diseases called epidemics; that yellow fever, whenever it exists in the city of New York, where the permit was given, is always an epidemic, and that yellow fever exists at all times in Havana, and is the peculiarly fatal disease of that climate, and is especially dangerous to strangers and to persons from the northern states visiting Havana.

All these offers were objected to by the plaintiff. The evidence was excluded and defendant excepted.

I entertain no doubt as to the correctness of this ruling. The permit was in writing, as required by the policy; and it was issued in modification of the policy, or as a waiver of one of its conditions, as contemplated by the policy. Being reduced to writing, it must be taken to be the repository and evidence of the final intention and understanding of the parties. The rule is elementary that when parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a. previous *colloquium* between the parties, or of conversations or declarations at the time when it was completed or afterwards, is rejected (*Greenl. on Ev.*, § 275; *Norton* agt. *Coons*, 2 *Seld.*, 33; *Barry* agt. *Ramson*, 2 *Kern.*, 462).

So firmly established is this rule, that it has frequently been applied and enforced without the citation of authorities

in support of it (*Thorp* agt. *Ross*, 4 *Keyes*, 546; *O'Beirne* agt. *Lloyd*, 1 *Sweeny*, 19; *Milton* agt. *Hudson River Steamboat Co.*, 4 *Lansing*, 76; *Delamater* agt. *Bush*, 63 *Barb.*, 168).

As the books abound in cases of the application of this rule, a few appropriate examples will be amply sufficient here.

*Lamatt* agt. *The Hudson River Fire Ins. Co.* (referred to in a note to 17 *N. Y.*, 199) was an action upon a fire policy which prohibited the use of camphene on the premises insured, except upon permission in writing, to be indorsed upon the policy with a charge for an extra premium therefor. The amount of premium indorsed upon the policy exceeded the regular premium upon such risks as appeared to be covered by the policy, by sufficient to cover the price for the use of camphene. It was held, nevertheless, that, as the indorsement did not state that the amount of premium noted was for the privilege of using camphene, and as it did not appear in some other manner in writing that such privilege had been secured to him, the assured was not protected, and parol evidence could not be received to vary the terms of the policy or to show a waiver of the prohibition at the time of the execution of the instrument.

*Howell* agt. *The Knickerbocker Life Ins. Co.* (19 *Abb.*, 217) was an action brought by the widow of George H. Howell to recover on a policy effected by her upon the life of her deceased husband for one year, with the privilege of annual renewal for life, if on the 15th day of July in each year the premium was paid. On July 15, 1864, the annual premium was not paid. On the same day Mr. Howell was seized with apoplexy, and on the following day he died. Some days thereafter the premium was tendered to the company and refused by the latter. The court held that the stipulated payment was a condition precedent to the continuance of the policy, and that parol evidence of a usage or agreement on the part of the company, at the time the insur-

ance was effected, to receive payment of premiums after the day named could not be received.

In the case of *The Mayor, &c., of the City of New York* agt. *The Brooklyn Fire Ins. Co.* (41 *Barb.*, 231) it was determined that the evidence offered by the defendant of the verbal statements of the agent of the plaintiffs, who effected the insurance, in respect to the future use and occupation of the building, was properly excluded, because such evidence would tend to vary the operation and effect of the language contained in the policy, and because a warranty as to such future use and occupation must be contained in the policy, or be reduced to writing in proper form, before it can be admitted to affect its construction or obligation.

In *Thompson* agt. *Hall* (45 *Barb.*, 214) the defendant Hall had signed the note in suit as surety for the defendant Thompson, with the knowledge and at the request of the plaintiff, who was the mother of the principal debtor. On the trial Hall offered to prove that he signed only on condition, which was assented to by the plaintiff, that upon the maturity of the note plaintiff would collect it promptly, and that plaintiff had failed so to do. The evidence was excluded and the general term affirmed the ruling.

Now, it is undoubtedly true that the permit in question was issued without a new consideration. The company was not bound to give it. But, having given it, it is bound by it, because it springs out and is based upon the consideration and terms of the policy as contemplated by the policy. Consequently, whether the said permit be regarded as a modification of the original contract of insurance or as a waiver of certain of the conditions of the policy, the rule which holds parol cotemporaneous evidence inadmissible to change its legal effect is equally applicable. This has been substantially determined in *Buckley* agt. *Bently* (48 *Barb.*, 283). In that case the indorser of a note had subsequently written over his signature the words, "Notice of protest waived by me." On the trial evidence was admitted to show that the

verbal arrangement between the parties, which resulted in the entry of those words on the note by the defendant, was that demand of payment as well as of notice was waived. On appeal this was held error, for which the judgment was reversed and a new trial ordered. The court held that, although the arrangement then made was not a contract, because there was no consideration, and had to operate, if at all, by way of *estoppel in pais*, still the question was, what was the arrangement? And as the parties undertook to put it in writing, they were to be deemed to have given thereby full expression to their meaning; and, hence, parol evidence of their language, contradicting, varying or adding to that which was contained in the written instrument, was inadmissible. " That there was no consideration for the agreement," says PARKER, J., in delivering the opinion of the court, " cannot change the rule of evidence in regard to what shall be competent proof of what the agreement was. It is a rule of evidence applicable to the mode of proving a fact; and whether that fact is a contract or a waiver can make no difference with reference to its applicability."

It is also true that the rule referred to is directed only against the admission of any other evidence of the *language* employed by the parties in making the agreement than that which is furnished by the writing itself, and that the writing may be read in the light of surrounding circumstances. But this is permitted only for the purpose of finding out the true sense of the written words, as the parties used them. It is for this reason that, whenever the necessity arises, the rule does not exclude the testimony of experts to aid the court in reading the instrument. Unless, therefore, the terms of a written instrument have generally, in respect to the subject-matter, as, by the known usage of trade, or the like, acquired a peculiar sense, distinct from the popular sense of the same words; or unless the context points out that, in the particular instance, and in order to effectuate the immediate intention of the parties, they should be understood in a peculiar sense,

they are to be understood in their plain, ordinary and popular sense (*Greenl. on Ev.*, § 278). It is not allowable to interpret what has no need of interpretation (*Broom's Leg. Max.*); and parol evidence should never be allowed to create an ambiguity where none exists (*Auburn City Bank* agt. *Leonard*, 40 *Barb.*, 119). The word "epidemics," in the permit, is not shown to have been used in the peculiarly medical sense attributed to it by the learned counsel for the company; nor was it used in a sense peculiar to the business of life insurance. On the contrary, it is plainly to be seen that it was used and understood in its plain, ordinary and popular sense as a familiar word in our language. No evidence of any kind from any other source was therefore admissible to change that meaning (*Baptist Church in Brooklyn* agt. *Brooklyn Fire Ins. Co.*, 28 *N. Y.*, 153; *Neff* agt. *Friedman*, 2 *Sweeny*, 607).

The company evidently did not intend to stipulate solely against diseases which usually assume an epidemic character. It meant to stipulate and did stipulate for exemption from liability in case of death from *any* disease, however simple and harmless under ordinary circumstances at home, that might by any possibility prevail in Cuba to an extent which could be called epidemic. The requirement of the permit that Pohalaski should return from Cuba before the first day of April following its date, at which time the sickly season usually commences there, is not without significance upon this point. This interpretation which, upon the whole, is the one most favorable to the company, excludes, however, the idea that plaintiff assumed the risk of her husband's death from yellow fever when not prevailing to an epidemic extent.

The evidence offered by defendant to vary or explain the ordinary and popular meaning of the language of the permit was, therefore, properly excluded; and when it is finally considered that the attempt to give such evidence was, in fact, an attempt to vary such meaning by the alleged assent of one now deceased, who was not shown to have had any

authority whatever from the plaintiff to make terms or stipulations for her, plaintiff's case becomes still stronger in reason, though, perhaps, not in law.

The judgment should be affirmed, with costs.

CURTIS and VAN VORST, JJ., concurred.