BENJAMIN HALPERN et al., Copartners, Doing Business as HALPERN, DAVIDOFF & SACK, Respondents, v. AMTORG TRADING CORPORATION, Appellant. (Action No. 1.)

BENJAMIN HALPERN et al., Surviving Members of Halpern, Davidoff & Sack, Respondents, v. AMTORG TRADING CORPORATION, Appellant. (Action No. 2.)

First Department, February 26, 1943.

*David Drucker* of counsel (*Charles Recht,* attorney), for appellant. (Action No. 1.)

*David Drucker* for appellant. (Action No. 2.)

*Aaron Holman* of counsel (*Brozan & Holman,* attorneys), for respondents.

COHN, J. Action No. 1 is to recover commissions which accrued up to the date of its commencement, to wit, March 26, 1941, upon a written contract by the terms of which plaintiffs were employed to obtain evidence and make investigations in connection with a case pending in the United States Customs Court. Action No. 2 is upon the same contract brought to recover for commissions which accrued after the date of the commencement of the first action.

The written contract upon which these suits were brought was prepared by plaintiffs in June, 1932, and later executed by defendant. It reads as follows:

" We hereby employ Benjamin Halpern and Samuel Sack and Herman Davidoff, for the purpose of gathering evidence and making investigations in relation to a case now pending with Customs Court involving the rate of duty to be assessed on dressed dog skins, and in the event such case is finally determined in favor of the importers, we agree to pay said Benjamin Halpern, Samuel Sack and Herman Davidoff, 5% of the refund paid or allowed to us on the reliquidation of entries of dog skins made by us or in our behalf, since the latter part of 1927.

" Dated, New York City, June 29th, 1932."

The same form of agreement had also been made contemporaneously between plaintiffs and numerous importers of dog skins, other than defendant. The agreements were negotiated following a dispute between dog skin importers and the Collector of Customs relative to the amount of duty to be assessed upon dog skin importations. Commencing in November, 1927, the Collector of Customs at New York began to assess these importations under the Tariff Act of 1922 at twenty-five per cent *ad valorem;* theretofore the duty had been only ten per cent *ad valorem.* Under the Tariff Act of 1930, enacted in June of that year, the Collector of Customs continued to assess importations at twenty-five per cent *ad valorem.* The importers protested the heavier duty imposed upon all entries both under the 1922 and 1930 Tariff Acts. It was their claim that the import duty of twenty-five per cent was not controlling.

At the trial of Action No. 1 plaintiffs submitted proof as to the services rendered by them in gathering evidence and making investigations relative to the dog skin case, which ultimately resulted in a favorable determination of the protests made. The judgment allowed plaintiffs a recovery of commissions upon the refunds paid to defendant by virtue of the decisions which held that all dog skins were undressed and embraced all entries made by defendant since the latter part of 1927.

With the exception of the court's ruling that the agreement between the parties embraced entries made after the execution of the contract as well as those made before, it appears that all issues were properly determined by the trial court. We are of the opinion that the contract did not cover entries made after the date of the execution thereof.

The intention of the parties must be determined by the terms of the writing. Its language did not include refunds upon those entries made by defendant subsequent to its date of execution. The contract is dated June 29, 1932, but, as the evidence establishes, it was not signed by defendant until about September 1, 1932. The wording of the instrument limits commissions to be received by plaintiffs, if successful, to refunds which shall be paid or allowed " on the reliquidation of entries of dog skins made by us or in our behalf, since the latter part of 1927." The word " reliquidation," according to the testimony, means recalculation of the assessment of duties following a protest. In our view, the verbiage used confines commissions to refunds paid or allowed on recalculation of entries " made " in the past.

Words are to be construed in their grammatical and ordinary sense. (*Pohalaski* v. *Mutual Life Ins. Co.*, 45 How. Pr. 504; 4 J. & S. [36 N. Y. Super. Ct.] 234, 252, affd. 56 N. Y. 640; *Heller* v. *Pope*, 250 N. Y. 132; *Cream of Wheat Co.* v. *Crist Co.*, 222 N. Y. 487, Restatement, Law of Contracts, § 235, subd. [a], p. 319.) Giving the term " made " its usual and ordinary meaning, it must be interpreted to refer to the period of time prior to the date of the contract in suit. It relates to those entries which were already on file at the Custom House at the time the contract was executed, that is, on September 1, 1932. The language employed indicates that the parties intended to set forth a specific period fixed by a date of beginning, " since the latter part of 1927," and ending with the date of the execution of the agreement.

The contract was drawn by plaintiffs. Therefore, any uncertainty or ambiguity of language, such as that which affects the date of the contract's termination, should be resolved most strongly against them, for they were the persons who used it. (*Gillet* v. *Bank of America*, 160 N. Y. 549, 554; *Segar* v. *King Features Syndicate, Inc.*, 173 Misc. 1036, affd. 259 App. Div. 871; Williston on Contracts, vol. 1, § 37, p. 100, vol. 3, § 621, p. 1788.) In the *Gillet* case (*supra*) the court at page 555 said: " The reason of the rule that the language of an instrument is to be construed against the person who proposes it rather than against the person who is invited to accept it, is that men are supposed to take care of themselves, and that he who chooses the words by which a right is given, ought to be held to the strict interpretation of them, rather than he who only accepts them."

Upon the trial of Action No. 1 plaintiffs failed to prove what portion of the refunds received by defendants was paid on dog skin entries made before September 1, 1932. It will therefore be necessary to have an allocation of the entries made prior to the date of the execution of the writing and those made thereafter so that a proper basis may be ascertained for determining the amount due to plaintiffs in accordance with this determination.

For the reasons set forth in this opinion the order granting summary judgment in Action No. 2 and the judgment entered thereon should be modified by eliminating therefrom all commissions on entries made on or after the date of the execution of the contract and as so modified affirmed, with costs to the appellant. The order denying defendant's cross-motion should be modified by granting the motion as to all commissions claimed on entries made on or after September 1, 1932, and as so modified affirmed.

The judgment in Action No. 1 should be reversed and a new trial ordered, with costs to the appellant to abide the event. The judgment and orders in Action No. 2 should be modified as hereinabove indicated.

In each appeal: MARTIN, P. J., UNTERMYER and CALLAHAN, JJ., concur; DORE, J., dissents.

In Action No. 1: Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.

In action No. 2: Order granting plaintiffs' motion for summary judgment and the judgment entered thereon modified by eliminating therefrom all commissions on entries made on or after the date of the execution of the contract and as so modified affirmed, with costs to the appellant. Order denying defendant's cross-motion modified by granting the motion as to all commissions claimed on entries made on or after September 1, 1932, and as so modified affirmed. Settle order on notice.