BENJAMIN HALPERN et al., as Surviving Members of a Copartnership Doing Business as HALPERN, DAVIDOFF & SACK, Appellants and Respondents, *v.* AMTORG TRADING CORPORATION, Respondent and Appellant. (Action No. 2.)

Argued November 16, 1943; decided January 13, 1944.

*David Drucker* for defendant, respondent and appellant. I. The contract pertained only to refunds on entries made under the Tariff Act of 1922. II. The judgment appealed from having been based upon *res judicata,* presumably established by a prior judgment which has been reversed, the judgment appealed from is without foundation. (*Hall* v. *Andrews,* 65 N. Y. 572; *Smith* v. *Frankfield,* 77 N. Y. 414; *Wood* v. *Jackson,* 8 Wend. 9; *Chamberlain* v. *Choles,* 35 N. Y. 477; *Briggs* v. *Bowen,* 60 N. Y. 454; *Messing* v. *Faulkner,* 83 Kan. 115; *Barton* v. *Petit,* 7 Cranch 288; *Poole & Co.* v. *Seney,* 70 Iowa 275.)

*Aaron Holman* for plaintiffs, appellants and respondents. I. Upon the evidence the trial court correctly found that the importers had engaged respondents' services in connection with all protests involved in the dogskin case. II. The Appellate Division erred in determining that the plaintiffs are not entitled to commissions on refunds collected on entries made by defendant after the date of the signing of the contract. III. Under the contract respondents were employed with respect to entries made under both tariff acts. IV. Appellant's premise that in reversing the judgment in Action No. 1 the Appellate Division granted a new trial upon all the issues *de novo* is incorrect.

LEHMAN, Ch. J. The defendant and other importers of " dressed dog skins " signed a contract, prepared by the plaintiffs and dated June 29, 1932, whereby the importers employed the plaintiffs " for the purpose of gathering evidence and making investigations in relation to a case now pending with Cus-

toms Court involving the rate of duty to be assessed on dressed dog skins ''. As compensation for services rendered under the contract, the importers, signing the contract, agreed that '' in the event such case is finally determined in favor of the importers '' they would pay to the plaintiffs '' 5% of the refund paid or allowed to us on the reliquidation of entries of dog skins made by us or in our behalf since the latter part of 1927.'' Concededly the '' case now pending with Customs Court '' to which the contract referred was decided in favor of the importers, and concededly refunds were allowed to the defendant ''on the reliquidation of entries of dog skins made '' by the defendant or in its behalf '' since the latter part of 1927.'' Such entries were made both under the Tariff Act of 1922 (42 U. S. Stat. 858) and the Tariff Act of 1930 (46 U. S. Stat. 590).

In the case referred to in the contract of employment, the question presented concerned the proper interpretation of the Tariff Act of 1922, the classification under that Act of dressed dog skins and the rate of duty payable on such skins. The provisions of the Tariff Act of 1930 were not in all respects the same as the provisions of the Tariff Act of 1922, and no question of the interpretation of the Tariff Act of 1930 was directly presented in that case, but after the decision in that case the importers successfully urged in appropriate Federal tribunals that under the Tariff Act of 1930 no duty was imposed upon dressed dog skins and that they were entitled to a refund of all duties paid on entries of dressed dog skins under that Act. The defendant paid to the plaintiffs the stipulated five per cent on refunds on the reliquidation of entries made under the Tariff Act of 1922. It claimed that under the terms of the contract the plaintiffs were not entitled to compensation measured by refunds on the reliquidation of entries made under the later Tariff Act, though indirectly the case which determined authoritatively the proper classification of imports of dressed dog skins under the Tariff Act of 1922, may have dictated the determination that under the later Tariff Act no duty was imposed on imports of skins so classified. The plaintiffs in June, 1941, brought an action to recover compensation measured by the refunds received by the defendant upon reliquidation of entries made under the Tariff Act of 1930.

That action was tried before the court without a jury, and " it was stipulated by and between counsel that findings of fact and conclusions of law are waived and that the court may direct a verdict." The trial court sustained the claim of the plaintiffs that under the terms of the contract of employment the plaintiffs are entitled to compensation measured by the refund on the reliquidation of entries both under the Tariff Act of 1922 and the Tariff Act of 1930, and judgment was entered in favor of the plaintiffs for the amount of the stipulated percentage of all refunds paid to the defendant before the date when the action was begun, including refunds paid upon the reliquidation of entries made after the date of the contract of employment. The plaintiffs immediately thereafter brought a second action to recover the stipulated percentage of the refunds paid to the defendant after the date when the prior action was begun. Hereafter in this opinion we refer to these actions as Action No. 1 and Action No. 2.

In their complaint in Action No. 2 the plaintiffs pleaded the judgment in their favor in Action No. 1. After the defendant's answer was served the plaintiffs moved for summary judgment on the ground that the judgment in Action No. 1 constituted a conclusive adjudication of every issue raised by the pleadings. The defendant opposed the motion made by the plaintiffs for summary judgment and made a cross motion for partial summary judgment in its favor dismissing that part of the claim of the plaintiffs based on refunds of entries made *after the date of the contract of employment*. The Justice at Special Term granted the motion of the plaintiffs and denied the cross motion of the defendant.

The defendant appealed to the Appellate Division from the judgments in both Action No. 1 and Action No. 2. The parties stipulated that the appeal in Action No. 2 be " consolidated with the appeal now pending " in Action No. 1. The " consolidated " appeals were presented to the Appellate Division upon one record and argued and decided together. Every issue which was raised in Action No. 2 had been litigated in Action No. 1, and it is plain that if the Appellate Division had affirmed the judgment in Action No. 1, it would have been constrained to affirm the judgment in Action No. 2. The Appellate Division did not, however, affirm the judgment in Action No. 1. In its

opinion rendered upon the " consolidated ", appeals it stated that " with the exception of the court's ruling that the agreement between the parties embraced entries made after the execution of the contract as well as those made before, it appears that all issues [in Action No. 1] were properly determined by the trial court. We are of the opinion that the contract did not cover entries made after the date of the execution thereof." (265 App. Div. 540, 542.) In that opinion the court pointed out, too, that in Action No. 1 the record did not show what part of the judgment was based on entries made after the date of the contract, and therefore that it will " be necessary to have an allocation of the entries made prior to the date of the execution of the writing ". In Action No. 2 the record showed which entries were made after the execution of the writing, and accordingly the Appellate Division ordered that the judgment in that action be " modified upon questions of law by eliminating therefrom all commissions on entries made on or after the date of the execution of the contract upon which this action was brought ". The judgment in Action No. 2 as so modified was affirmed by the Appellate Division and both sides have appealed to this court from that judgment.

Though the Appellate Division in its opinion stated that in Action No. 1 " it appears that all issues were properly determined by the trial court " except that the trial court failed to allocate the entries made prior to the execution of the contract and included in the judgment " commissions on entries made " after the execution of the contract, the Appellate Division ordered that the judgment be " *in all things reversed upon questions of fact and of law,* and a new trial ordered, with costs to the appellant *to abide the result of the final judgment* in the action." No appeal could be taken to this court from that order, and under the provisions of that order there can be no doubt that the judgment in Action No. 1 has been completely vacated and that at the new trial the parties can introduce new evidence and that every issue of fact or law may be litigated anew. That is true though the Appellate Division *in its opinion* indicated that upon the record presented to it the trial court had correctly decided all such questions except one, and doubtless upon a new trial before a court without a jury the decision of the trial court would be influenced if not dictated by the

views expressed in the opinion of the Appellate Division. (cf. *Gugel* v. *Hiscox*, 216 N. Y. 145.) It is the order of the Appellate Division reversing the judgment upon questions of *fact* as well as questions of law which determines the scope of the new trial which has been granted, and the language of the order shows beyond possible doubt that the Appellate Division intended to grant a plenary new trial in Action No. 1 on every question of fact and of law. (Civ. Prac. Act, §§ 602 and 607.)

We assume that the judgment in Action No. 1, until reversed, constituted a conclusive adjudication of every issue raised in Action No. 2 by the pleadings; that the defendant at the time the motion for summary judgment was granted was not entitled to a second trial of such issues, that the judgment in the prior action " established " the plaintiffs' cause of action in Action No. 2, and that in accordance with rule 112 of the Rules of Civil Practice the Justice at Special Term was constrained to grant plaintiffs' motion for summary judgment. The reversal of the prior adjudication in Action No. 1 destroys the basis of the summary judgment in Action No. 2. That summary judgment now constitutes an adjudication of liability against the defendant though at present there is no existing judicial determination of any issue of fact or law upon which the plaintiffs base their assertion of such liability and upon which the defendant bases its denial of liability. This court cannot determine the questions of fact or law which in accordance with the order of the Appellate Division may be litigated upon the new trial in Action No. 1. It is plain that a judgment based solely on a prior adjudication which has been reversed thereafter cannot stand. (*Restatement of the Law of Judgments*, § 44.)

There has, however, been some diversity of opinion in regard to the procedure which must be followed to set aside a judgment based upon a prior adjudication subsequently reversed. It has been said that " If proceedings for review in the second action are pending in an appellate tribunal, it may, by the weight of authority, take judicial notice of its own reversal or other disposition of the first judgment and reverse the judgment based upon it." (2 Freeman on Judgments, § 721.) There are statements in the opinion in *Parkhurst* v. *Berdell* (110 N. Y. 386, 392) which seem to indicate that in this State " the only relief " a party can have in such circumstances " is to move

\* \* \* in the court of original jurisdiction for a new trial ''. The problem presented in that case was very different from the problem presented upon this appeal. We need not now decide whether ordinarily an appellate tribunal may '' take judicial notice of its own reversal or other disposition of the first judgment '' though such reversal is not part of the record on appeal from the second judgment. Here the parties have stipulated that the appeals be consolidated and heard upon one record, and what was said by the Supreme Court of the United States in *Butler* v. *Eaton* (141 U. S. 240, 243, 244), is peculiarly apposite: '' The judgment complained of is based directly upon the judgment of the Supreme Judicial Court of Massachusetts, which we have just reversed. It is apparent from an inspection of the record that the whole foundation of that part of the judgment which is in favor of the defendant is, to our judicial knowledge, without any validity, force or effect, and ought never to have existed. Why, then, should not we reverse the judgment which we know of record has become erroneous, and save the parties the delay and expense of taking ulterior proceedings in-the court below to effect the same object?''

For these reasons the judgment granted upon the plaintiffs' motion for summary judgment must be set aside and the plaintiffs' appeal challenging the sufficiency of the judgment must be dismissed.

The judgments should be reversed and motion for summary judgment denied, with costs to the appellant-defendant to abide the event. The appeals of the plaintiffs-appellants should be dismissed, without costs.

LOUGHRAN, RIPPEY, LEWIS, CONWAY, DESMOND and THACHER, JJ., concur.

Judgment accordingly.